UNITED STATES of America,
Plaintiff–Appellee,

v.

Roberto RANGEL–ARREOLA,
Defendant–Appellant.

No. 91–2190.

United States Court of Appeals,
Tenth Circuit.

May 5, 1993.

Presiliano A. Torrez, Asst. U.S. Atty. (Don J. Svet, U.S. Atty., with him on the brief), Albuquerque, NM, for plaintiff-appellee.

William J. Rapp, Cincinnati, OH, for defendant-appellant.

Before MOORE, BRORBY, and EBEL, Circuit Judges.

BRORBY, Circuit Judge.

Mr. Roberto Rangel–Arreola was convicted of possession of marijuana with intent to distribute and conspiracy to do the same in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), 846, and 18 U.S.C. § 2. On appeal, Mr. Roberto Rangel contends there was insufficient evidence to convict him on the conspiracy charge, and further alleges the district court erred by excluding evi-

dence, by declining to recognize his "minimal role" in the offense, and by failing to require strict compliance with Fed. R.Crim.P. 32. For the reasons stated herein, we affirm the district court.

## I. Background

At approximately 8:00 p.m. on November 30, 1990, the codefendant, Jose Luis Castillo–Salinas, was stopped at a United States border patrol checkpoint located on Interstate 10, west of Las Cruces, New Mexico. After detecting nervous behavior, border patrol agents referred Mr. Castillo to the secondary inspection station. Upon further questioning, Mr. Castillo consented to a search of his semi-tractor. Agents located an obstruction in the gas tank and then, with the use of a trained dog, discovered 472 pounds of marijuana hidden in compartments within the fuel tanks.

Later the same evening, at about 2:00 a.m. on December 1, the appellant, Mr. Rangel, was stopped at the same border patrol checkpoint. Border patrol agents questioned Mr. Rangel about his citizenship, ownership of the vehicle, and destination before referring him to the secondary inspection station. At the secondary inspection, agents noticed that the fuel tanks on Mr. Rangel's semi-tractor had been tampered with. Mr. Rangel consented to a canine inspection of the vehicle whereupon the agents discovered approximately 432 pounds of marijuana hidden in compartments inside the fuel tanks. After arresting Mr. Rangel, agents discovered in his suitcase a certificate of insurance issued in the name of Mr. Rangel, but covering the vehicle driven by Mr. Castillo.

Mr. Rangel was convicted on two counts: (1) conspiracy to possess with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), 846, and 18 U.S.C. § 2, and (2) possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B),

and 18 U.S.C. § 2. Mr. Rangel was sentenced to seventy-eight months as to each count of conviction, the sentences to run concurrently.

■ Mr. Rangel appeals his conviction and sentence on the following grounds: (1) insufficient evidence to sustain a conviction on the conspiracy charge; (2) the district court erred by excluding certain evidence; (3) the court erred in sentencing by failing to consider Mr. Rangel's minimal role; and (4) the court erred by not requiring strict compliance with Fed.R.Crim.P. 32 at sentencing.[1] We affirm the district court.

## II. Sufficiency of the Evidence

Mr. Rangel contends the government presented insufficient evidence to sustain the conspiracy conviction. "In evaluating the sufficiency of the evidence, we must view the evidence—both direct and circumstantial, together with all reasonable inferences to be drawn therefrom—in the light most favorable to the government." *United States v. Hooks,* 780 F.2d 1526, 1529 (10th Cir.) (citing *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). The appropriate standard of review for a case involving a criminal conviction "is whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Hooks,* 780 F.2d at 1531 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). In a conspiracy trial, caution must be taken to be sure the conviction was not obtained "'by piling inference upon inference.'" *United States v. Fox,* 902 F.2d 1508, 1513 (10th Cir.) (quoting *United States v. Butler,* 494 F.2d 1246, 1252 (10th Cir.1974)), *cert. denied,* 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990).

■ To find a defendant guilty of a drug trafficking conspiracy under 21 U.S.C.

---

1. Mr. Rangel also asserts in his brief that counsel was ineffective at trial and at sentencing. At oral argument, however, Mr. Rangel dropped these claims to preserve them for a 28 U.S.C. § 2255 appeal, as ineffective assistance of counsel claims are generally not resolved upon direct appeal if the claim was not raised before the district court. *Beaulieu v. United States,* 930 F.2d 805, 807 (10th Cir.1991).

§ 846, the government must establish the following: (1) the defendant and one or more persons agreed to violate federal narcotics law, (2) the defendant knew at least the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily became a part of the conspiracy, and (4) interdependence existed among the defendant and his or her alleged coconspirators. *United States v. Evans,* 970 F.2d 663, 668 (10th Cir.1992), *cert. denied,* ── U.S. ──, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993).[2] "[T]he government may establish these elements by direct or circumstantial evidence." *Id.* In order to demonstrate that Mr. Rangel and Mr. Castillo were involved in a single conspiracy, the government must show there existed " 'a unity of purpose or a common design and understanding' " between the coconspirators to possess marijuana with the intent to distribute. *United States v. Harrison,* 942 F.2d 751, 755 (10th Cir.1991) (citing *Fox,* 902 F.2d at 1514).[3]

■ Upon review of the record, we find the following evidence sufficient to sustain Mr. Rangel's conspiracy conviction. Both Mr. Rangel and Mr. Castillo drove similar vehicles insured by the same company and registered under the name Carlos Munoz. The vehicles contained similar hidden compartments in the fuel tanks and each compartment concealed over 400 pounds of marijuana. Prior to beginning their journey, both men stayed at the All Star Inn in El Paso. Both men reached the border patrol checkpoint only five hours apart and both claimed they were driving their trucks toward Arizona to pick up trailers for a friend. The government also presented testimony that both men had an ongoing business relationship with Mr. Munoz. Thus, there was sufficient evidence for the jury to conclude that both Mr. Rangel and Mr. Castillo were driving the trucks for Mr. Munoz. Moreover, a certificate of insurance for the vehicle driven by Mr. Castillo was issued in the name of Mr. Rangel and found in Mr. Rangel's suitcase.

■ From the evidence presented, the jury could reasonably have concluded that Mr. Castillo and Mr. Rangel were involved in a single marijuana smuggling operation organized by Carlos Munoz and that the requirements of a drug trafficking conspiracy under 21 U.S.C. § 846 were satisfied. Clearly, an agreement to violate the law existed. "[T]he circumstances, acts, and conduct of the parties are of such a character that the minds of reasonable men may conclude therefrom that an unlawful agreement exists." *United States v. Kendall,* 766 F.2d 1426, 1431 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986). The agreement need not be explicit, but may be inferred from the circumstances. *Fox,* 902 F.2d at 1514 (citing *Kendall,* 766 F.2d at 1431).

The jury could likewise reasonably conclude that Mr. Rangel knew the essential objective of the conspiracy was to distribute large quantities of marijuana, and knowingly and voluntarily joined the conspiracy. The government presented sufficient evidence to show that the "defendant shared a common purpose or design with his alleged coconspirators." *Evans,* 970 F.2d at 669. Although the codefendants claimed they did not know each other, " '[s]everal persons may be parties to a single conspiracy even if they have never directly communicated with one another; the question is whether they are aware of each other's participation in a general way and have a community of interest.' " *Harrison,* 942 F.2d at 756 (quoting W. LaFave & A. Scott, Jr., *Handbook on Criminal Law* § 62, at 470 (1972)).

**2.** In Mr. Rangel's brief he cites *United States v. Nall,* 949 F.2d 301, 305 (10th Cir.1991), as requiring an overt act to establish a conspiracy. *Nall* applies to conspiracy charges under 18 U.S.C. § 371, but the drug conspiracy statutes, 21 U.S.C. §§ 846 and 963, do not contain the overt act requirement. *U.S. v. Savaiano,* 843 F.2d 1280, 1293–94 (10th Cir.1988).

**3.** " '[A] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, *so long as there is sufficient proof of mutual dependence and assistance.'* " *Harrison,* 942 F.2d at 756 (quoting *United States v. Maldonado–Rivera,* 922 F.2d 934, 963 (2d Cir.1990), *cert. denied,* ── U.S. ──, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991)).

Finally, sufficient evidence existed to establish the essential element of interdependence among the coconspirators. "The activities of [the] alleged co-conspirators in one aspect of the charged scheme were necessary or advantageous to the success of the activities of co-conspirators in another aspect of the charged scheme, or the success of the venture as a whole." *United States v. Daily*, 921 F.2d 994, 1007 (10th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 405, 116 L.Ed.2d 354 (1991). Therefore, Mr. Rangel's and Mr. Castillo's activities were interdependent.

### III. Exclusion of Evidence

Mr. Rangel next contends the district court erred when it excluded the testimony of three witnesses for the defense. Mr. Rangel proposed to offer into evidence the testimony of two truck drivers and an investigator to show that it was common practice for truck drivers to accept trucking jobs without checking the fuel tanks or insurance and without knowing the purpose of their journey.

■ Upon appeal, we review a district court's decision to exclude evidence for an abuse of discretion. *Boren v. Sable*, 887 F.2d 1032, 1033 (10th Cir.1989). " 'Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.' " *McEwen v. City of Norman*, 926 F.2d 1539, 1553–54 (10th Cir.1991) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986)).

#### A. Habit Evidence

Mr. Rangel contends the excluded testimony was relevant as habit evidence tending to support his defense that he had no knowledge of the marijuana. We disagree.

Under Fed.R.Evid. 406, certain habitual or routine conduct is considered relevant even though the conduct involves different events or does not relate in time to the defendant's conduct at issue in the trial. Rule 406 states: "Evidence of the habit of a person or of the routine practice of an organization ... is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

■■ Mr. Rangel misinterprets Rule 406. Rule 406, on its face, applies in only two instances: (1) to show an individual acted in conformity with his or her habit, and (2) to show an organization acted in conformity with its routine practice. The first application is clearly not relevant as the proffered evidence does not involve Mr. Rangel's habitual conduct, but instead the behavior of unrelated individuals. Thus, in order to utilize Rule 406, Mr. Rangel must demonstrate the two truck drivers were part of an organization or group to which he belonged and that their testimony would have related the routine practice of the group. The record does not support a finding that free-lance truck drivers in the El Paso region form a cohesive organization. The underlying rationale for applying Rule 406 to organizations is that as a practical matter, organizations must make many of their practices routine and this routine lends a degree of reliability to habit evidence. *See* 2 Weinstein's Evidence § 406[01], at 406–10 (1992). The district court did not abuse its discretion in finding Rule 406 inapplicable to a loose-knit group with no apparent structure or routine.

Moreover, the evidence which Mr. Rangel sought to introduce was not habit evidence. Habit is defined by this court as " 'a regular practice of meeting a particular kind of situation with a certain type of conduct, or a reflex behavior in a specific set of circumstances.' " *Perrin v. Anderson*, 784 F.2d 1040, 1046 (10th Cir.1986) (quoting *Frase v. Henry*, 444 F.2d 1228, 1232 (10th Cir.1971)). Nothing in the record suggests that the proffered testimony would satisfy this definition as truck drivers' behavior upon accepting a job is not of the reflexive nature or consistency required for habit evidence.

#### B. Expert Testimony

■ Mr. Rangel also contends the truck drivers' and investigator's testimony was

admissible as expert testimony pursuant to Fed.R.Evid. 702.[4] Rule 702 states that if "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The touchstone of admissibility under Rule 702 is the helpfulness of the evidence to the trier of fact. *Werth v. Makita Elec. Works, Ltd.,* 950 F.2d 643, 648 (10th Cir.1991).

The district court, without stating its reasoning, found Rule 702 inapplicable. The district court could have reasonably concluded that the investigator and truck drivers were not expert witnesses, or that the testimony would not assist the jury in determining whether Mr. Rangel had knowledge of the marijuana. Since nothing in the record suggests that the district court's decision was manifestly erroneous or an abuse of discretion, we affirm the district court. *See id.* at 647.

### IV. Minimal Role of Appellant

Mr. Rangel next contends the district court erred during sentencing by not considering his minimal role in the crime and, therefore, we should remand for resentencing. Mr. Rangel bases this argument on the fact that he was merely a drug courier or "mule." We affirm the district court.

At sentencing, the district court adopted the presentence report, including the finding that Mr. Rangel's role in the offense was not minor. Under the Sentencing Guidelines, a defendant's offense level can be decreased two levels for a minor role in the offense, or four levels for a minimal role. U.S.S.G. § 3B1.2. A district court's determination that a defendant is not a minimal or minor participant under the Sentencing Guidelines is a factual finding which we review for clear error. *United States v. Calderon–Porras,* 911 F.2d 421, 422 (10th Cir.1990).

Drug couriers are an indispensable component of drug dealing networks. *United States v. Arredondo–Santos,* 911 F.2d 424, 426 (10th Cir.1990). As such, this court has refused to adopt a per se rule allowing a downward adjustment based solely on a defendant's status as a drug courier. *Id.; see also, Calderon–Porras,* 911 F.2d at 423–24 ("The mere fact that a defendant is a courier in a drug-smuggling operation does not entitle that defendant to be classified as a minimal participant."). Instead, a downward adjustment for a defendant's role in an offense turns on the defendant's culpability relative to other participants in the crime. *Arredondo–Santos,* 911 F.2d at 426.

The district court did not commit clear error in choosing not to classify Mr. Rangel as a minor or minimal participant. Mr. Rangel was involved in transporting over 900 pounds of marijuana in vehicles for which he had purchased the insurance. Mr. Rangel played an important role in the marijuana trafficking operation and, as such, his role in the offense was not minimal.

### V. Compliance with Rule 32

Mr. Rangel finally contends we should remand for resentencing as the district court erred by not ensuring strict compliance with Fed.R.Crim.P. 32. Specifically, Mr. Rangel asserts the district court failed to assure that Mr. Rangel was given the opportunity to review his presentence report with counsel and object to any inaccuracies contained therein.

Fed.R.Crim.P. 32(a)(1) provides that:
[b]efore imposing sentence, the court shall ... (A) determine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report ... (B) afford counsel for the defendant an opportunity to speak on behalf of the defendant; and (C) address the defendant personally and determine if the defendant wishes to make a statement and to

---

**4.** Mr. Rangel also argues in his brief that the testimony of the investigator should be admissible as testimony from a lay witness. We will not consider this argument upon appeal as Mr. Rangel did not raise it at the district court level.

present any information in mitigation of the sentence.

 Rule 32(c)(3)(A) further requires the court to provide the defendant and defendant's counsel with a copy of the presentence report at least ten days before sentencing, and requires the court to "afford the defendant and the defendant's counsel an opportunity to comment on the report."

In determining whether the district court complied with its obligation to assure compliance with Rule 32, we must define the parameters of that obligation. This is a matter of first impression in the Tenth Circuit.

Mr. Rangel urges this court to adopt the viewpoint taken by the Seventh Circuit in *United States v. Rone*, 743 F.2d 1169 (7th Cir.1984). The Seventh Circuit, in order to carry out the intent of Rule 32 and to establish a clear record, requires the district court to ask the defendant the following questions at sentencing: (1) whether the defendant had an opportunity to read the presentence report, (2) whether the defendant and defense counsel discussed the report, and (3) whether the defendant wishes to challenge any facts in the report. *Id.* at 1174.

Other circuits which have addressed this question do not require the district court to ask the defendant specific questions, but instead, allow the sentencing judge flexibility in determining that the mandates of Rule 32 were satisfied. *United States v. Lewis*, 880 F.2d 243, 245 (9th Cir.1989); *United States v. Victoria*, 877 F.2d 338, 340 (5th Cir.1989); *United States v. Stevens*, 851 F.2d 140, 143–44 (6th Cir.1988); *United States v. Miller*, 849 F.2d 896, 898 (4th Cir.1988); *United States v. Cortez*, 841 F.2d 456, 460–61 (2d Cir.), *cert. denied*, 486 U.S. 1058, 108 S.Ct. 2829, 100 L.Ed.2d 929 (1988); *United States v. Aleman*, 832 F.2d 142, 144 n. 6 (11th Cir.1987); *United States v. Mays*, 798 F.2d 78, 80 (3d Cir. 1986).

 We adopt the majority view. Rule 32(a)(1)(C) requires the district court to "address the defendant personally and [ask him if he] wishes to make a statement [on his own behalf] and to present any information in mitigation of [punishment]." Thus, under this provision of Rule 32, Congress specifically requires the sentencing judge to personally address the defendant during sentencing. By contrast, Rule 32(a)(1)(A) merely requires the court to determine whether the defendant and defendant's counsel had the opportunity to read and discuss the report, but does not require the court to address the defendant personally. While the sentencing judge could most easily satisfy the obligations of Rule 32(a)(1)(A) by asking the questions listed in *Rone*, "[w]e will not impose such a requirement where Congress apparently has chosen to abstain from doing so." *Lewis*, 880 F.2d at 245. Therefore, we hold the sentencing court "may draw reasonable inferences from court documents, the defendant's statements, and counsel's statements" in determining whether the defendant and counsel had the opportunity to read and discuss the presentence report. *Victoria*, 877 F.2d at 340.

 In the present case, there is nothing in the record to suggest the sentencing judge made the required determination under Rule 32(a)(1)(A). The record reflects the following conversation:

> THE COURT: Have you had an opportunity to review the presentence report?
>
> [Defense Counsel]: Yes, your Honor.
>
> THE COURT: Any facts in the presentence report you wish to call to my attention?
>
> [Defense Counsel]: No, your Honor.
>
> THE COURT: Do you have anything you wish to say on behalf of your client?
>
> [Defense Counsel]: Your Honor, same thing I said for the client before. One thing I can point out, he has no prior convictions.... We ask for the lower end of the guidelines....
>
> THE COURT: All right, Mr. Rangel-Arreola, do you have anything you wish to say before I impose sentence?
>
> Interpreter: Yes, sir. Yes. If I could be sent to a prison in California, if that would be possible, and if I could receive copies of everything that's happened since the beginning.

[Defense Counsel]: I will do that, Your Honor.

THE COURT: All right. The Court adopts the factual findings and guideline applications in the presentence report and finds that there is no need for an evidentiary hearing as there are no disputed facts.

The sentencing judge specifically addressed Mr. Rangel's counsel concerning the presentence report, but nothing in the phrasing of the question or counsel's reply suggests that Mr. Rangel had the opportunity to review the presentence report or discuss the report with counsel. *See e.g., Lewis*, 880 F.2d at 245–46 (requirements of Rule 32(a)(1)(A) satisfied when defendant's counsel told sentencing judge that defendant had read presentence report); *Mays*, 798 F.2d at 80 (defense attorney's statement to the court that he read the presentence report with the defendant sufficient to enable sentencing judge to make the required determinations under Rule 32(a)(1)(A)). Although the judge addressed Mr. Rangel personally, it was not in the context of the presentence report and nothing in Mr. Rangel's reply demonstrated personal knowledge of the presentence report's contents. Furthermore, there is nothing else in the record which suggests Mr. Rangel read the report or discussed it with counsel. *See e.g., Victoria*, 877 F.2d at 340 (at sentencing the defendant acknowledged in writing that he had examined the presentence report). The court could not have reasonably inferred from Mr. Rangel's or his counsel's statement that Mr. Rangel had the opportunity to read and discuss the presentence report with counsel. Therefore, we hold the district court failed to fully comply with Rule 32(a)(1)(A).

We do not, however, remand for resentencing because Mr. Rangel suffered no

prejudice as a result of the Rule 32 violation.[5] Mr. Rangel points to no factual inaccuracies used in computing his sentence. At oral argument, Mr. Rangel alleged that if given the opportunity, he would have challenged both the marijuana quantity stated in the presentence report and his minimal role in the offense. These challenges are without merit.

The quantity of marijuana which the report applied to the Sentencing Guidelines reflects the amount of marijuana found in Mr. Rangel's and Mr. Castillo's vehicles. Since Mr. Rangel was convicted of conspiring with Mr. Castillo, it was appropriate to base Mr. Rangel's sentence on the amount of marijuana found in both trucks. *See* United States Sentencing Commission, *Guidelines Manual*, § 1B1.3(a)(1), comment. (n. 2) (1992). Mr. Rangel offers no evidence to contradict the drug quantity applied by the sentencing court.

Likewise, Mr. Rangel's contention that his role in the offense was minimal is without factual support and has already been addressed. Since Mr. Rangel can assert no contradictory facts challenging the presentence report's accuracy, and because Mr. Rangel suffered no prejudice from the technical violation of Rule 32, it would be meaningless to remand for resentencing.

In summary, we find sufficient evidence to sustain Mr. Rangel's conspiracy conviction. We also find the district court did not err in excluding Mr. Rangel's proffered evidence or in determining Mr. Rangel was not a minimal participant. While the district court did err in failing to fully comply with Fed.R.Crim.P. 32, Mr. Rangel suffered no prejudice. We therefore AFFIRM the district court's judgment and sentence.

---

**5.** While we recognize presentence reports are critical to sentencing and fairness requires the defendant be given the opportunity to read the report and discuss it with counsel, we will not remand for resentencing without some showing of prejudice by the defendant. To remand when no prejudice exists is to require the district court to undergo an exercise in futility in order to obtain the same sentence. *See Stevens,*

851 F.2d at 144 (although the district court failed to make the determination that defendant had an opportunity to discuss the presentence report with counsel, the Sixth Circuit did not remand because the defendant suffered no prejudice); *but see Miller,* 849 F.2d at 898, n. 1 (the Fourth Circuit stated, in dicta, that the defendant "is not required to establish prejudice in order to secure his rights under Rule 32").