9 F.3d 118
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ricorte ANGULO-LOPEZ, Defendant-Appellant.
 No. 92-6364.
 United States Court of Appeals, Tenth Circuit.
 Oct. 26, 1993.
 
 ORDER AND JUDGMENT[1]
 Before BRORBY, BARRETT and KELLY, Circuit Judges.
 
 
 1
 Ricorte Angulo-Lopez[2] was convicted of five drug related counts including conspiracy to possess and distribute cocaine, interstate transportation in aid of racketeering, two counts of possession with intent to distribute, and manufacturing cocaine base. He was sentenced, inter alia, to 400 months. On appeal, Mr. Angulo-Lopez raises five issues: insufficiency of the evidence to sustain all five counts of conviction; sentencing computation error; improper closing argument; and the sentencing discrepancy between crack cocaine and powdered cocaine violates the Equal Protection Clause and the Eighth Amendment. We affirm in part and reverse in part.
 
 
 2
 At trial, the government showed Ricorte Angulo-Lopez' brother was one of the principals in a cocaine distribution operation. Cocaine was transported from Houston to Oklahoma City where it was distributed to wholesalers and retailers. The organization included couriers, drivers, owners of safe houses, cooks, distributors, and brokers. Each participant had an integral role in this illegitimate business. Ricorte Angulo-Lopez' role in this drug organization was that of his brother's aide and helper. He frequently accompanied his brother in conducting cocaine transactions, retrieved drugs for transactions arranged by his brother, and received and counted drug proceed money.
 
 
 3
 * Mr. Angulo-Lopez challenges the sufficiency of the evidence to sustain the convictions. We address each count separately.
 
 A. The conspiracy to distribute:
 
 4
 Ricorte Angulo-Lopez asserts the government failed to present sufficient evidence to connect Ricorte Angulo-Lopez to a conspiracy. Ricorte Angulo-Lopez argues that each element necessary to uphold a conspiracy conviction was lacking.
 
 
 5
 We have previously set forth the necessary elements of a drug conspiracy: (1) the defendant and one or more persons agreed to violate federal narcotics law; (2) the defendant knew at least the essential objectives of the conspiracy; (3) the defendant knowingly and voluntarily became a part of the conspiracy; and (4) interdependence existed among the defendant and his or her alleged coconspirators. United States v. Rangel-Arreola, 991 F.2d 1519, 1522 (10th Cir.1993). "We review the entire record in the light most favorable to the government to determine whether the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, is such that a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Fox, 902 F.2d 1508, 1513 (10th Cir.), cert. denied, 498 U.S. 874 (1990).
 
 
 6
 Ricorte Angulo-Lopez contends the government presented no tangible evidence such as motel receipts or airline tickets which link him to the conspiracy. We have reviewed the record and are satisfied that more than sufficient evidence exists which would enable a reasonable jury to find all of the necessary elements beyond a reasonable doubt. Ricorte Angulo-Lopez was characterized as a Vice-President or "right arm" of the organization. Ricorte Angulo-Lopez was involved with the following conduct indicative of his participation in the conspiracy: he distributed cocaine to a reseller who brought the proceeds back to him; he counted the money brought in from the drug proceeds on numerous occasions; he retrieved cocaine and brought it to the transaction site so that his brother could distribute it; he was taught how to "cook" cocaine into crack, and in fact "cooked" the cocaine; he hid cocaine when he perceived that the authorities were coming; and he generally assisted his brother in the drug business.
 
 
 7
 The aforementioned evidence demonstrates Ricorte Angulo-Lopez agreed to the conspiracy, was aware of the objective, and knowingly and voluntarily participated. Moreover, the conduct of all conspirators was interdependent. "Interdependence is present when each alleged coconspirator ... depend[s] on the operation of each link in the chain to achieve the common goal.' " United States v. Evans, 970 F.2d 663, 670 (10th Cir.1992) (quoting Fox, 902 F.2d at 1514), cert. denied, 113 S.Ct. 1288 (1993). The record abounds with evidence showing that the participants acted in conformity with the dictates of the leader in effectuating the ultimate goal of distributing cocaine base. See United States v. Juan Carlos Angulo-Lopez.
 
 B. Unlawful travel in interstate commerce:
 
 8
 Appellant challenges the sufficiency of the evidence on Count 11, which charged him with unlawful travel in interstate commerce on or about September 3, 1991. A person violates 18 U.S.C.1952(a)(3) if he "travels in interstate or foreign commerce ... with intent to ... otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity." Ricorte Angulo-Lopez' argument focuses upon the uncertainty concerning the date of the offense. Evidence in the record reflects that Ricorte Angulo-Lopez distributed cocaine both in Oklahoma and in Texas approximately during that time period. While it is true the prosecution never established Ricorte Angulo-Lopez' offense occurred exactly on September 3, the record reflects that he was in Oklahoma shortly after Labor Day. Therefore, sufficient evidence exists to sustain this conviction.
 
 C. Distribution of cocaine:
 
 9
 Mr. Angulo-Lopez argues there exists "no evidence that [he] was involved in the distribution of cocaine individually or collectively at any time." Counts 13 and 15 charge Ricorte Angulo-Lopez with distribution of cocaine to Carlos Gonzales on September 3 and September 23, 1991 respectively. According to Carlos Gonzales' testimony, Ricorte Angulo-Lopez was present during the cocaine transaction on September 23, 1991. Viewing the evidence in the light most favorable to the government, this evidence is sufficient to uphold Ricorte Angulo-Lopez' conviction on Count 15. Carlos Gonzales also testified, however, that the transaction on September 23 was the first time he met Ricorte Angulo-Lopez. The Government fails to cite to us any evidence sustaining this conviction, and our independent review of the record reveals no evidence in support of this conviction. Therefore, the evidence is insufficient to uphold Ricorte Angulo-Lopez' conviction on Count 13, in which he allegedly distributed cocaine to Carlos Gonzales on September 3. Consequently, we must reverse his conviction on that count. Because Mr. Angulo-Lopez was sentenced concurrently to 400 months on each of Counts 1, 13, 15, and 40, the duration of his sentence will not be affected by the reversal on Count 13. We must, however, remand to vacate the sentence on this count.
 
 D. Manufacture of crack cocaine:
 
 10
 The appellant submits that the evidence was insufficient to convict Ricorte Angulo-Lopez on Count 40, the manufacturing of cocaine base. This argument is unsupported by the record. Ricorte Angulo-Lopez was twice observed "cooking" cocaine powder into cocaine base.
 
 II
 
 11
 Ricorte Angulo-Lopez challenges his sentence asserting the following claims: (1) all cocaine was counted as cocaine base when the evidence showed Mr. Angulo-Lopez mainly distributed powdered cocaine; (2) the government failed to show with a minimum indicia of reliability that the substance distributed was cocaine base; (3) the enhanced penalties for cocaine base are unconstitutionally vague; and (4) the quantity attributed to Mr. Angulo-Lopez for sentencing was erroneous.
 
 A. Sentence for cocaine base:
 
 12
 The district court sentenced Ricorte Angulo-Lopez under the Drug Quantity Table (U.S.S.G. 2D1.1(c)) for cocaine base, as "it was reasonably foreseeable to this defendant that it would be converted to cocaine base if it hadn't already been, because that was the entire proven goal and purpose of the conspiracy." As a matter of law, we deemed it proper to treat the cocaine distributed as cocaine base in United States v. Juan Carlos Angulo-Lopez, --- F.2d at ----, slip op. at 11, when the defendant intended the powdered cocaine to be converted into crack. The district court's finding that Ricorte Angulo-Lopez was aware of the regular conversion is supported by the record.
 
 B. Quantity of cocaine base tested:
 
 13
 Appellant contends the government failed to meet its burden of showing through a minimum indicia of reliability that the substance distributed by the conspiracy was cocaine base. The government presented testimony from four different forensic chemists who testified that four different samples of substances recovered were cocaine base. Ricorte Angulo-Lopez complains the chemists only tested less than 400 grams of the seventeen and one-half kilograms for which Ricorte Angulo-Lopez was charged. The fact that the government must prove a quantity for sentencing by a minimum indicia of reliability does not require it to chemically test all the narcotics charged. Testimony throughout the trial reflected the substance distributed was cocaine base. As this testimony had a minimum indicia of reliability, it was permissible to estimate the amount of cocaine distributed based upon the testimony. United States v. McIntyre, 997 F.2d 687, 709 (10th Cir.1993).
 
 C. Vagueness of term "cocaine base":
 
 14
 Mr. Angulo-Lopez asserts 21 U.S.C. 841 and U.S.S.G. 2D1.1 are unconstitutionally vague as they fail to properly define the term "cocaine base." Previously, we specifically held the use of the term "cocaine base" was constitutionally sound. McIntyre, 997 F.2d at 710; United States v. Slater, 971 F.2d 626, 638 (10th Cir.1992); United States v. Turner, 928 F.2d 956, 960 (10th Cir.), cert. denied, 112 S.Ct. 230 (1991). The forensic chemists unequivocally testified the substance recovered was cocaine base. (Pp.419, 714, 806, 1151.) Moreover, participants in the conspiracy testified the conspiracy was distributing cocaine base as it was intentionally transformed by conspiracy members into that status. Certainly then, the term "cocaine base" was not vague as applied to the defendant's conviction and sentence in this case.
 
 
 15
 D. Quantity attributed to Ricorte Angulo-Lopez:
 
 
 16
 Ricorte Angulo-Lopez challenges the quantity of cocaine base attributed to him for sentencing purposes. The presentence report attributes seventeen and one-half kilograms to Ricorte Angulo-Lopez. In his brief, Mr. Angulo-Lopez candidly concedes nine kilograms (six and one-half from Brent Smiley transactions and two and one-half from Joan Patterson transactions) but argues he should not be accountable for the remaining quantity.[3]
 
 
 17
 This court will not consider this argument. The transcript of the sentencing hearing reveals counsel for Mr. Angulo-Lopez stated to the sentencing court:
 
 
 18
 As far as the quantity that's calculated, I believe that the probation officer has sufficiently identified those quantities .... that I have no argument to present that would contradict those quantities as calculated.
 
 
 19
 An appellate court cannot and will not entertain a disputed factual issue for the first time on appeal. Mr. Angulo-Lopez was given the opportunity to require the Government to present its evidence of drug quantities. Mr. Angulo-Lopez waived this right when he accepted the accuracy of the presentence report and cannot now be heard to the contrary.
 
 III
 Closing Arguments
 
 20
 Appellant contends the trial court erred in failing to declare a mistrial based upon improper closing arguments by counsel for a codefendant and the prosecutor. This issue involving the identical circumstances was fully addressed in United States v. Coleman, --- F.2d ---- (No. 92-6356) (10th Cir. Oct. 26, 1993).
 
 IV
 
 21
 Mr. Angulo-Lopez finally contends the punishment assessed was in violation of his Equal Protection rights as secured by the Fifth Amendment and violated the Eighth Amendment's prohibition against cruel and unusual punishment.
 
 
 22
 We upheld the sentencing disparity between powdered cocaine and crack based upon these same facts and claims in United States further discussion is necessary.
 
 
 23
 The judgment and sentence of the district court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 Ricorte Angulo-Lopez is the brother of Juan Carlos Angulo-Lopez who was also convicted. See United States v. Juan Carlos Angulo-Lopez, --- F.2d ---- (No. 92-6320) (10th Cir. Oct. 26, 1993). Ricorte was tried jointly with his brother and four other defendants, all of whom were convicted
 
 
 [3]
 In order to be thorough, we reviewed the Presentence Report's calculation of seventeen and one-half kilograms and find it to be wholly supported by the record. The report attributed eight kilograms to the defendant from Brenda Johnson's trips to Houston during the summer of 1991, seven kilograms were derived from the Brent Smiley transactions in which Ricorte Angulo-Lopez participated, and the final two and one-half kilograms are admitted by Ricorte Angulo-Lopez and come from transactions at Joan Patterson's