**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 4, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 09-3048 |
| v. | (D. Kansas) |
| MANUEL BARRAZA-MARTINEZ, also known as William Omar Garcia-Otero, also known as Manuel B. Martinez, | (D.C. No. 2:07-CR-20147-CM-1) |
| Defendant - Appellant. | |

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 09-3057 |
| v. | (D. Kansas) |
| NESTOR RAMIREZ, also known as Jesus Calec Manso, | (D.C. No. 2:07-CR-20147-CM-2) |
| Defendant - Appellant. | |

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **McWILLIAMS**, and **GORSUCH**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    INTRODUCTION

Manuel Barraza-Martinez and Nestor Ramirez appeal their convictions for conspiracy to possess cocaine with intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1), 846, and for possession with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1).  On appeal, both defendants seek to suppress evidence seized pursuant to a traffic stop for two reasons: (1) lack of reasonable suspicion the vehicle failed to maintain its lane of travel in violation of Kan. Stat. Ann. § 8-1522(a); and (2) Barraza-Martinez's consent to the search of the vehicle was not voluntarily and freely given. Barraza-Martinez also argues the district court erred in refusing to grant him a minor participant adjustment under USSG § 3B1.2(b).  Ramirez argues the evidence was insufficient to support his convictions and the sentence imposed was substantively unreasonable.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), this court **AFFIRMS** the convictions and sentences of both defendants.

## II.    BACKGROUND

On October 17, 2007, at approximately 12:45 p.m., Deputy Carl Bentley of the Franklin County Sheriff's Department was in his patrol car at Mile Post 181 on Interstate 35 in Kansas, monitoring the speed of northbound traffic.  Traffic was light, the sky was overcast, the roadway was wet, and it was raining.  A white

box truck marked "All States Upholstery" caught Deputy Bentley's attention as it drove by.

Prior to commencing his shift, Deputy Bentley read a "Be-On-The-Look-Out" ("BOLO") indicating a Georgia state trooper had seized approximately $3 million in U.S. currency from a box truck marked "All States Upholstery." The BOLO stated the currency was in a highly sophisticated hidden compartment, contained photographs of the truck and the hidden compartment, and a description of how the compartment was activated. The BOLO also stated there were at least six other identical trucks that may contain drugs and currency, and that, when stopped, the Georgia driver had falsely stated he had been performing an upholstery job at a Denny's restaurant.

Deputy Bentley followed the truck for approximately ten miles. Deputy Bentley eventually passed the vehicle, but then slowed his vehicle to allow the truck to pass him. After the truck passed, Deputy Bentley observed the truck traveling on, or over, the left solid line for approximately one-eighth of a mile. In Deputy Bentley's experience, this was a violation of Kansas law, which requires that "a vehicle shall be driven as nearly as practicable entirely within a single lane [of traffic]." Kan. Stat. Ann. § 8-1522(a).

Deputy Bentley activated his emergency lights and conducted a traffic stop. Deputy Bentley made contact with the driver, later identified as defendant

Barraza-Martinez, and the passenger, later identified as defendant Ramirez.[1] Deputy Bentley informed both defendants of the reason for the stop and asked for their driver's licenses and proof of insurance. While at the truck's cab, Deputy Bentley noticed the nervousness of the two occupants, cans of Red Bull energy drink, two "Boost Mobile" cellular telephones, an atlas, and several air fresheners hanging from the gear shift. Both Barraza-Martinez and Ramirez were wearing blue polo-style shirts with an "All States Upholstery" logo.

His suspicions raised, Deputy Bentley requested Barraza-Martinez to accompany him back to the patrol car while Ramirez remained in the truck. With Barraza-Martinez in the passenger's seat, Deputy Bentley conducted records checks on the defendants' licenses. Both licenses, later determined to be under false names, appeared valid and neither defendant had outstanding warrants. Deputy Bentley told Barraza-Martinez he was issuing a written warning for committing the traffic violation. While writing the warning, Deputy Bentley inquired from where the two men were coming. Barraza-Martinez stated they were traveling from Oklahoma City, Oklahoma, where they had repaired booths at a Denny's restaurant. Deputy Bentley asked Barraza-Martinez where they were headed and he stated they were going to St. Paul, Minnesota. When asked,

---

[1]The defendants' true identities were initially unclear. Barraza-Martinez produced a Minnesota driver's license under the name "William Omar Garcia." Ramirez produced a California identification card under the name "Jesus Calec Manso." Both defendants eventually revealed their true identities to the police.

Barraza-Martinez stated he had worked for "All States Upholstery" for one year and that he and Ramirez took turns driving the truck. Ramirez later stated he had worked for the company for one month.

Deputy Bentley handed Barraza-Martinez the warning citation, his driver's license, insurance paperwork, and Ramirez's license, and told Barraza-Martinez he was "free to go." As Barraza-Martinez began to exit the patrol car, Deputy Bentley asked him if he could ask him some more questions. Barraza-Martinez said "Yes," to which Deputy Bentley responded, "Remember, you are free to go." Barraza-Martinez again responded "Yes."

Deputy Bentley then asked Barraza-Martinez if he had any methamphetamine, marijuana, or heroin in the truck. Barraza-Martinez maintained eye contact with Deputy Bentley and said he did not. Deputy Bentley next asked whether the truck contained cocaine. Barraza-Martinez broke eye contact, looked out the front window, and said, "No." Deputy Bentley then asked Barraza-Martinez if he could search the truck. Barraza-Martinez responded "Yes" and volunteered to open it.

Within minutes, Sergeant Owen arrived on the scene. Deputy Bentley and Barraza-Martinez got out of the patrol car, Barraza-Martinez retrieved the key to the cargo area, and unlocked the back of the truck. In the cargo box, Deputy Bentley observed an antique-looking sewing machine with a layer of dust on it. Deputy Bentley also observed air compressors and hoses, which appeared to be

-5-

new, and numerous stained and dirty foam pads. Barraza-Martinez's statement about re-upholstering the Oklahoma City Denny's notwithstanding, Deputy Bentley suspected the equipment had not been used recently.

Against the cargo box's front wall, the deputies located a large brown toolbox. Deputy Bentley recognized the toolbox from photographs in the BOLO. Behind the toolbox was an aftermarket compartment which consisted of three metal trays. Deputy Bentley told Barraza-Martinez and Ramirez he believed there was contraband in the vehicle, and then spoke to the Georgia trooper who had issued the BOLO. The Georgia trooper instructed Deputy Bentley on how to locate and access the hidden compartment. Following the Georgia trooper's instructions, Deputy Bentley looked under the vehicle and observed a wire at the suspected location.

Due to the rain and the suspicious findings, the deputies removed the truck to the Franklin County Noxious Weed Department in Ottawa, Kansas, where they continued the search. A trained drug-detection dog alerted to the front wall of the cargo box. The hidden compartment was opened by connecting a power source to the wires underneath the truck, just as the Georgia trooper indicated, and 250 kilogram-sized packages of cocaine were recovered from the hidden compartment. Further investigation revealed no evidence that "All States Upholstery" was a legitimate business, even though the exterior of the truck had been meticulously designed to appear legitimate. Of the two numbers displayed on the side of the

-6-

truck, one had been disconnected and the other was a toll-free number not associated with an upholstery business.  Furthermore, no receipts, invoices, or pay stubs indicative of a legitimate business were found.

Barraza-Martinez and Ramirez were charged in a two-count indictment with conspiracy to distribute and possess with intent to distribute more than five kilograms of a mixture and substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846, and with possession, with intent to distribute, of more than five kilograms of a mixture or substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Both Barraza-Martinez and Ramirez moved to suppress evidence seized pursuant to the traffic stop.  The district court reviewed Deputy Bentley's testimony and a digital recording of the event, and found the evidence showed Deputy Bentley had reasonable suspicion to stop the truck based upon his personal observation of a traffic violation.  The district court stated,

> it is clear . . . that defendant's vehicle strayed out of its lane multiple times over a short distance without adverse physical conditions.  The court is aware that in the time in question, it was raining, but the court would note for the record that there was no evidence indicating that the rain caused the violation. . . .  After passing the deputy's car, defendants veered onto the shoulder of the highway 17 seconds later and again 28 seconds later.  The driver, which the court believes to have been defendant Barraza-Martinez, should have been able to maintain a lane and did not do so on at least two separate occasions.  [The] Court finds this is sufficient to create reasonable suspicion that defendants violated [Kan. Stat. Ann. § 8-1522]. . . .

The district court also ruled that Barraza-Martinez's consent was valid, and that the scope of the stop, including the continuation of the stop and search at a new location, was proper.

Barraza-Martinez proceeded to a bench trial, on stipulated facts, and was found guilty of the charged offenses. The district court sentenced Barraza-Martinez to 151 months' imprisonment on each count to be served concurrently, which represented the low end of the advisory Guideline range.

Ramirez had a jury trial. At the close of the government's case, Ramirez orally moved for a judgment of acquittal and the district court took the motion under advisement. The jury returned a verdict of guilty on both counts. Ramirez again moved for a judgment of acquittal, which the district court denied. The district court sentenced Ramirez to 235 months' imprisonment on each count to be served concurrently, which represented the low end of the advisory Guideline range.

## III. ANALYSIS

### A. Issues Common to Both Defendants

Both Barraza-Martinez and Ramirez appeal the district court's denial of their motions to suppress. Both argue the evidence seized pursuant to the traffic stop should have been suppressed for two reasons: (1) lack of reasonable suspicion that their truck failed to maintain its lane of travel in violation of Kan. Stat. Ann. § 8-1522(a); and (2) because Barraza-Martinez's consent to the search

of the vehicle was not voluntarily and freely given. "In reviewing the district court's denial of a motion to suppress, we review the court's factual findings for clear error and view the evidence in the light most favorable to the government." *United States v. Worthon*, 520 F.3d 1173, 1178 (10th Cir. 2008).

### 1. Reasonable Suspicion

Both defendants argue the truck's relatively brief failure to maintain its lane did not create reasonable suspicion of a traffic violation under Kansas law. Before initiating a stop of a vehicle, an "officer must have an objectively reasonable articulable suspicion that a traffic violation has occurred." *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993). An officer's subjective intentions play no part in this analysis. *United States v. Cervine*, 347 F.3d 865, 870 (10th Cir. 2003) ("The fact that the troopers had other motivations for stopping [the defendant] has no bearing upon this review.").

Both Barraza-Martinez and Ramirez contend that Deputy Bentley's initial traffic stop was not supported by reasonable suspicion of a traffic violation. Under Kansas law, a vehicle must be driven "as nearly as practicable entirely within a single lane." Kan. Stat. Ann. § 8-1522(a). Recently, in *State v. Marx*, the Kansas Supreme Court interpreted § 8-1522(a)'s single-lane rule as requiring "more than an incidental and minimal lane breach." 215 P.3d 601, 612 (Kan. 2009) (concluding no reasonable suspicion existed where the deputy observed a vehicle momentarily cross the fog line, overcorrect, and subsequently cross the

center line).  Accordingly, *Marx* held that to establish reasonable suspicion, "a detaining officer must articulate something more than an observation of one instance of a momentary lane breach."  *Id.*  *Marx* rejected the notion that every intrusion upon a lane's marker lines gives rise to reasonable suspicion, but also stopped short of holding that a single swerve can never amount to reasonable suspicion.  *Id.*  Rather, the *Marx* court held that under the circumstances, and given the record's complete silence as to the driving conditions and how far the vehicle crossed over marker lines, the state had failed to carry its burden of establishing the deputy had a reasonable suspicion of a violation of § 8-1522(a).  *Id.* at 613; *see also United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir. 1999) ("The use of the phrase 'as nearly as practicable' in [Kan. Stat. Ann. § 8-1522(a)] precludes . . . absolute standards, and requires a fact-specific inquiry to assess whether an officer has probable cause to believe a violation has occurred.").

In this case, the district court found, based on its review of the digital recording and Deputy Bentley's testimony, that the defendants' vehicle "strayed out of its lane multiple times over a short distance without adverse physical conditions."  Unlike *Marx*, the government introduced evidence of the extent of the intrusion upon the lane markers and the driving conditions.  Specifically, the district court noted, "after passing the deputy's car, defendants veered onto the shoulder of the highway 17 seconds later and again 28 seconds later."  The evidence also indicated one of the lane violations lasted approximately one-eighth

-10-

of a mile. As to the driving conditions, the district court noted that, though it was raining, "there was no evidence indicating that the rain caused the violation." A review of the record reveals that these factual finding were not clearly erroneous. As a result, the traffic stop was justified by reasonable suspicion that defendants violated § 8-1522.

### 2.     Consent to Search

The defendants next contend Barraza-Martinez's consent to the search of the vehicle was not voluntary and therefore invalid. Generally, "[a] traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority." *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000). If the documents have been returned, the analysis turns on whether the individual "has an objective reason to believe that he was not free to end his conversation with the law enforcement officer and proceed on his way." *United States v. Sandoval*, 29 F.3d 537, 540 (10th Cir. 1994).

Both defendants rely heavily on *Sandoval*, in which the Tenth Circuit held the officer's response of "No, wait a minute," to the motorist's question "That's it?" rendered the subsequent questioning non-consensual. *Id.* at 542. The present case, however, is distinguishable from *Sandoval* on two grounds. Unlike *Sandoval*, Deputy Bentley indicated the original investigative detention was

-11-

terminated by handing Barraza-Martinez a copy of the warning citation and stating he was free to go. Barraza-Martinez then began opening the patrol car door, demonstrating he understood he was free to leave. Deputy Bentley's subsequent question, "Hey, William, can I ask you a few more questions?" did not retract Barraza-Martinez's freedom to leave the patrol car. Unlike the "No, wait a minute" directive at issue in *Sandoval*, Deputy Bentley's question, along with his earlier statement that Barraza-Martinez was free to go, served to give a reasonable person in Barraza-Martinez's position the choice to submit to the additional questions. Barraza-Martinez's consent to the search of the vehicle was a product of the subsequent consensual exchange. Accordingly, the district court properly denied the defendants' motions to suppress.

### B. Issue Specific to Barraza-Martinez

#### 1. Minor Participant Status

Barraza-Martinez also argues the district court erred in determining he was not a minor participant under USSG § 3B1.2(b). A defendant bears the burden of proving by a preponderance of the evidence that an adjustment under § 3B1.2(b) is warranted. *United States v. Martinez*, 512 F.3d 1268, 1275 (10th Cir. 2008). The denial of a minor participant adjustment represents a factual finding this court reviews for clear error. *Id.* A minor participant adjustment applies only to "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." USSG § 3B1.2 cmt.

-12-

n.3(A).  The Guidelines acknowledge this determination is "heavily dependent upon the facts of the particular case," and that, as a result, "the court, in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted."  *Id.* § 3B1.2 cmt. n.3(C).

Barraza-Martinez argues his duties were limited to picking up the truck and driving it to a particular location and that he therefore played a very minor role, especially in light of the complexity of this particular drug trafficking operation. This court, however, has previously determined that couriers such as Barraza-Martinez "are an indispensable component of drug dealing networks."  *United States v. Rangel-Arreola*, 991 F.2d 1519, 1524 (10th Cir. 1993); *see also United States v. Calderon-Porras*, 911 F.2d 421, 423-24 (10th Cir. 1990) ("The mere fact that a defendant is a courier in a drug-smuggling operation does not entitle that defendant to be classified as a minimal participant.").  In denying Barraza-Martinez's request for a minor participant adjustment, the district court considered the large amount of cocaine seized in this case, the level of sophistication of the drug-trafficking operation, and the level of thought and planning Barraza-Martinez engaged in to facilitate his participation.  The district court's factual determinations were based on a permissible view of the evidence. As a result, it was not clear error to deny Barraza-Martinez the minor participant adjustment.

### C. Issues Specific to Ramirez

#### 1. Scope of the Search

Ramirez argues the search exceeded the scope of Barraza-Martinez's consent and that there was no probable cause to continue the search at a new location. The scope of Deputy Bentley's search did not exceed the scope of the consent given by Barraza-Martinez. If an officer indicates his intent is to search for drugs or contraband, a motorist's consent "certainly implies that the officer could look wherever drugs might be hidden." *United States v. Ramstad*, 308 F.3d 1139, 1147 (10th Cir. 2002). Because Barraza-Martinez consented to the search and offered to open the truck's rear cargo door immediately after Deputy Bentley asked for consent to search specifically for drugs, no credible argument exists that the hidden compartment, where the cocaine was discovered, was not within the scope of Barraza-Martinez's consent.

Furthermore, once Deputy Bentley determined there was a wire under the truck, coupled with all the other information he obtained, he had probable cause to believe the truck contained a hidden compartment and did not need Barraza-Martinez's consent to move the truck and search it further. "[V]isual evidence of a hidden compartment, without more, may provide probable cause to conduct or expand a search." *United States v. Ledesma*, 447 F.3d 1307, 1317 (10th Cir. 2006). The Tenth Circuit imposes two requirements to establish probable cause: (1) "the likelihood that there really is a hidden compartment," and (2) "the

likelihood that a vehicle with a hidden compartment would, in the circumstances, be secreting contraband." *United States v. Jurado-Vallejo*, 380 F.3d 1235, 1238 (10th Cir. 2004). The *Jurado-Vallejo* decision noted the second factor is easily met when common sense dictates a particular vehicle's hidden compartment would be highly likely to contain contraband. *Id.* at 1238-39 ("[I]t is hard to conceive of a legitimate use for a large hidden storage compartment in any vehicle, let alone one with the cargo space of a Ford Expedition.").

Both requirements are easily met in this case. First, the vehicle and Barraza-Martinez's story matched both the information in the BOLO and the additional information provided by the Georgia trooper. This established a strong likelihood that the vehicle contained a hidden compartment. Second, the record reveals no legitimate reasons for the defendants' box truck to be fitted with such a hidden storage compartment. As a result, even if there was no consent to move the vehicle and continue the search, Deputy Bentley had probable cause to search the vehicle from the moment he confirmed the location of a wire below where he suspected the hidden compartment was located.

### 2. Sufficiency of the Evidence

Ramirez argues the district court erred in denying his motion for judgment of acquittal because there was insufficient evidence to support his convictions. Sufficiency of the evidence to support a jury's verdict is reviewed de novo. *United States v. McKissick*, 204 F.3d 1282, 1289 (10th Cir. 2000). On appeal,

-15-

this court asks "only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.* (quotation omitted). In reaching its verdict, a jury is permitted to draw reasonable inferences from direct or circumstantial evidence. "[A]n inference must be more than speculation and conjecture to be reasonable, and caution must be taken that the conviction not be obtained by piling inference on inference." *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995) (quotations omitted).

To support a conspiracy conviction, "the government must show (1) that two or more persons agreed to violate the law; (2) that the defendant knew the essential objectives of the conspiracy; (3) that the defendant knowingly and voluntarily took part in the conspiracy; and (4) that the conspirators were interdependent." *United States v. Wright*, 506 F.3d 1293, 1297-98 (10th Cir. 2007). To sustain a conviction for possession of cocaine with intent to distribute, the government must prove beyond a reasonable doubt that the defendant knowingly possessed cocaine with the specific intent to distribute. *United States v. Hager*, 969 F.2d 883, 888 (10th Cir. 1992).

Ramirez argues no reasonable jury could infer beyond a reasonable doubt that he knew of the presence of cocaine in the truck or agreed to participate in a common plan to distribute it. He relies heavily upon this court's decision in

-16-

*Jones*, which reversed the conspiracy and possession convictions of a passenger in a vehicle caught transporting a large quantity of drugs. 44 F.3d at 865. After conducting a thorough review of the record, the *Jones* court noted the complete lack of evidence indicating the defendant "knew the car contained cocaine or that she participated in a common plan to distribute it." *Id*. at 865, 866 ("[The] mere presence, as a passenger, in a car found to be carrying drugs is insufficient to implicate the passenger in the conspiracy."). Rather, the evidence in *Jones* only supported an inference the defendant suspected illegal activity. *Id.* at 866. This inference, coupled only with the defendant's passenger status, was insufficient to support the defendant's conspiracy conviction. *Id.*

This case, however, is distinguishable from *Jones*. Unlike the defendant in *Jones*, Ramirez actively participated in the ruse that the truck in which he was traveling was in the business of re-upholstering worn-out booths at Denny's establishments. Ramirez told Deputy Bentley he had worked for "All States Upholstery" for one month and wore a shirt with the company's logo. In addition, the condition of the tools in the cargo box and the complete lack of receipts, invoices, or pay stubs allowed the jury to infer Ramirez knew "All States Upholstery" was a fictitious company associated with a significant drug enterprise. Further, Ramirez provided false identification to the officer, was in close proximity to the keys (and opening mechanism) providing access to the drugs, and shared driving responsibilities. Considering all the evidence in this

-17-

case in the light most favorable to the government, a reasonable jury could have inferred that all the elements of both crimes were established.

### 3. Substantive Reasonableness

Finally, Ramirez argues his sentence is substantively unreasonable in light of his personal history and characteristics, particularly, his lack of criminal history. This court reviews a district court's sentencing determination for abuse of discretion, asking whether the sentence is reasonable in light of the factors set fourth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 51 (2007). "If the district court correctly calculates the Guidelines range based upon the facts and imposes sentence within that range, the sentence is entitled to a presumption of reasonableness." *United States v. Sutton*, 520 F.3d 1259, 1262 (10th Cir. 2008). This presumption can be rebutted by showing the sentence is unreasonable in light of the factors found in 18 U.S.C. § 3553(a). *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006).

In this case, the district court correctly calculated the advisory Guidelines range and properly considered the § 3553(a) factors before imposing a sentence at the low end of the advisory Guidelines range. Ramirez has not provided any nonfrivolous grounds to rebut this presumptively reasonable sentence. Accordingly, the district court's sentence is not substantively unreasonable.

## IV. CONCLUSION

For the foregoing reasons, this court **AFFIRMS** Barraza-Martinez's and Ramirez's convictions and sentences on all counts.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge