

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-14-2000

# United States v. Stevens

Precedential or Non-Precedential:

Docket 99-1682 & 99-1683

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Stevens" (2000). *2000 Decisions.* Paper 165.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/165

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 14, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 99-1682, 99-1683

UNITED STATES OF AMERICA

v.

DWAYNE STEVENS,

      Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Criminal Nos. 97-625-02 and 99-165-01)
District Judge: Honorable Ronald J. Buckwalter

Argued March 9, 2000

Before BECKER, Chief Judge, NYGAARD and
GARWOOD,* Circuit Judges.

(Filed: August 14, 2000)

_____

* Honorable Will L. Garwood, United States Circuit Judge for the Fifth
Circuit, sitting by designation.

Sylvia A. Russianoff
Assistant Federal Defender
Johnathan D. Libby (argued)
David L. McColgin
Assistant Federal Defender,
 Supervising Appellate Attorney
Maureen Kearney Rowley
Chief Federal Defender
Federal Court Division
Defender Association of Philadelphia
Lafayette Building, Suite 800
437 Chestnut Street
Philadelphia, PA 19106-2414
 Counsel for Appellant

Joseph R. Biden, III (argued)
Assistant U.S. Attorney
Michael R. Stiles
U.S. Attorney
Walter S. Batty, Sr.
Assistant U.S. Attorney
Chief Of Appeals
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
 Counsel for Appellee

OPINION OF THE COURT

GARWOOD, Circuit Judge:

Defendant-appellant Dwayne Stevens (Stevens) pleaded guilty to an indictment charging him with one count of carjacking, in violation of 18 U.S.C. S 2119, and one count of carrying a firearm during the commission of a violent crime, in violation of 18 U.S.C. S 924(c). Subsequently, Stevens pleaded guilty to an information charging another, separate carjacking offense. At a consolidated proceeding, the district court sentenced Stevens to 130 months' imprisonment for the indicted carjacking offense, followed by a minimum mandatory consecutive term of 120 months' imprisonment for the firearms offense, and also sentenced

him to 120 months' for the other carjacking offense, to be served concurrently with the other sentence. Stevens now appeals both of his sentences. We affirm.

Facts and Proceedings Below

Stevens committed two separate carjacking offenses on February 6, 1997, and February 11, 1997. Regarding the February 11, 1997 offense, Stevens was indicted on November 20, 1997 in United States District Court for the Eastern District of Pennsylvania for one count of carjacking, in violation of 18 U.S.C. S 2119, and one count of carrying a firearm while committing a violent crime, in violation of 18 U.S.C. S 924(c). Pursuant to a plea agreement, he pleaded guilty to both counts on February 2, 1998. Regarding the February 6, 1997 offense, Stevens was charged by information on March 26, 1999 with another count of carjacking, to which he pleaded guilty (waiving indictment) on May 18, 1999. The two cases were consolidated for sentencing.

The district court sentenced Stevens on August 24, 1999. Regarding the indictment for the February 11, 1997 offense, the district court sentenced Stevens to a term of 130 months' imprisonment for the carjacking count and a mandatory consecutive term of 120 months' imprisonment for the firearm count, to be followed by a three-year term of supervised release. Regarding the information for the February 6, 1997 offense, the district court sentenced Stevens to 120 months' imprisonment and three years of supervised release, to be served concurrently with his other sentence. The district court also ordered a $100 special assessment fee. Final judgment was entered on August 25, 1999, and Stevens filed his notice of appeal for both sentences on September 1, 1999. The two appeals were consolidated on September 30, 1999.

Discussion

On appeal, Stevens argues that the district court erred in failing to "verify" whether he had read and discussed the presentence investigation report (PSR) with his attorney, in denying his request for a downward departure, and in calculating his sentence. Finding no merit to his arguments, we now affirm.

3

I. Rule 32's "Verification" Requirement

FED. R. CRIM. P. 32(c)(3)(A) requires that before imposing sentence, a district court must "verify that the defendant and defendant's counsel have read and discussed the presentence report."[1] This Court has declined to interpret Rule 32 as creating "an absolute requirement that the court personally ask the defendant if he has had the opportunity to read the report and discuss it with counsel." United States v. Mays, 789 F.2d 78, 79 (3d Cir. 1986). Instead, we have allowed for a more functional fulfillment of the rule, requiring only that the district court "somehow determine that the defendant has had this opportunity." Id. at 80.[2]

In the present case, it appears that the district court fell short of even this mark. At sentencing, the district court made the following remarks:

> This is the time set for sentencing in the matter of United States v. Dwayne Stevens in connection with

_____

1. This requirement originally appeared as FED. R. CRIM. P. 32(a)(1)(A), which provided that before sentencing, the court "shall (A) determine that the defendant and the defendant's counsel have had the opportunity to read and discuss the . . . report." In 1994, Rule 32 was amended and reorganized into its present form. Most of this Court's cases considered the pre-1994 language of Rule 32, but for purposes of this appeal, the changes are quite minor and those cases retain their relevance.

2. The Mays court noted that the drafters of Rule 32 explicitly imposed on district courts the requirement of conducting a direct colloquy with the defendant elsewhere in the Rule, specifically in subsection (a)(1)(C), now (c)(3)(C). This subsection requires a district court, before imposing sentence, to "address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence." The Mays court reasoned that the drafters could have imposed a similar requirement on a court for its determination about whether the defendant had read and discussed the PSR with his attorney, but had not. Accordingly, the court declined to impute such a requirement into the provision at issue here. See Mays, 798 F.2d at 80. In reaching this conclusion, the Mays court disagreed with the Seventh Circuit, which had construed Rule 32 to impose an affirmative duty on the part of the sentencing court to address the defendant directly on the question of his having read and discussed the PSR with counsel. See United States v. Rone, 743 F.2d 1169, 1174 (7th Cir. 1984).

4

> charges filed in this court to Docket Numbers 97-625 and 99-6 -- 99-165. A presentence investigation has been done with respect to the charges and those respective informations or indictments and that presentence investigation included that the total offense level here was 27 and criminal history category was six, and that therefore the guideline provisions were 130 to 162 months. And, there is, of course, the mandatory consecutive term on Docket 97-625 of ten years. Are there any requests for additions or corrections to the presentence?"

We have no doubt that the omission by the able trial judge was inadvertent and doubtless a lapse from his usual practice. At all events, the statement does not meet Rule 32's mandate that the court "verify," in one way or another, that the defendant has read and discussed the PSR with his attorney. In fact, the government concedes that the district court failed to satisfy this requirement. Stevens contends that the district court's noncompliance with Rule 32(c)(3)(A) constitutes reversible error and that this Court should vacate his sentence and remand for resentencing. Because Stevens did not bring this matter to the district court's attention, the applicable standard of review is that of "plain error," as Stevens concedes. See FED. R. CRIM. P. 52(b); United States v. Dozier, 119 F.3d 239, 244 (3d Cir. 1997).

Under the plain error standard of Rule 52(b),3 this Court may vacate and remand Stevens's sentence only if wefind that (1) an error was committed; (2) the error was plain; and (3) the error affected Stevens's substantial rights. See United States v. Olano, 113 S.Ct. 1770, 1777-78 (1993). In most cases, the language about affecting substantial rights "means that the error must have been prejudcial," that is, "[i]t must have affected the outcome of the district court proceedings." Id. at 1778. If a forfeited error is "plain" and "affect[s] substantial rights," a Court of Appeals "has the authority to order correction, but is not required to do so."

_____

3. FED. R. CRIM. P. 52(b) provides that "[p]lain errors or defects affecting
substantial rights may be noticed although they were not brought to the
attention of the court."

Id. The Court should exercise its discretion to order such a correction only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. at 1776.

As the error was "plain," our next inquiry must be whether it affected Stevens's "substantial rights." No published opinion of this Court has yet addressed this question. The Fourth, Sixth, Seventh, Ninth, and Tenth Circuits have all considered the issue, however, and have found, under either a "plain error" or "harmless error" analysis,4 that a district court's failure to comply with the dictates of Rule 32(c)(3)(A) (or its earlier counterpart) does not require vacatur and remand if the defendant cannot demonstrate that he suffered prejudice from the district court's error. See United States v. Lockhart, 58 F.3d 86, 89 (4th Cir. 1995) (applying plain error analysis to hold that when defendant pointed to no portion of the PSR that he would have challenged had the district court conducted an express inquiry, he did not show prejudice and vacatur and remand were not warranted); United States v. Stevens, 851 F.2d 140, 144 & n.7 (6th Cir. 1988) (finding no prejudice from district court's failure to address defendant directly about an allegedly inaccurate PSR because the court did not rely on any incorrect information in the PSR, and refusing to vacate and remand); United States v. Rodriguez–Luna, 937 F.2d 1208, 1213 (7th Cir. 1991) (declining to vacate and remand when defendant could not show prejudice from district court's failure to conduct express inquiry about the PSR); United States v. Davila–Escovedo, 46 F.3d 840, 844 (9th cir. 1994) (applying harmless error analysis, without addressing plain error, to deny

_____

4. The primary difference between the two standards of review is that under plain error review, the defendant rather than the government bears the burden of persuasion with respect to prejudice. See Olano, 113 S.Ct. at 1778 ("In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial."). Moreover, under plain error review, even if the Court of Appeals concludes that substantial rights were affected, although it "has the authority to order correction" it "is not required to do so," id., and it
should do so only if the error "seriously affect[s] the fairness, integrity,
or public reputation of judicial proceedings." Id. at 1776.

6

defendant's request for resentencing when defendant made no claim of prejudice from the district court's Rule 32 violation); United States v. Rangel-Arreola, 991 F.2d 1519, 1526 & n.5 (10th Cir. 1993) ("While we recognize presentence reports are critical to sentencing and fairness requires the defendant be given the opportunity to read the report and discuss it with counsel, we will not remand for resentencing without some showing of prejudice by the defendant. To remand when no prejudice exists is to require the district court to undergo an exercise in futility in order to obtain the same sentence.").

The record reflects that the PSR was sent both to Stevens personally and to his counsel, and that thereafter and prior to sentencing defense counsel filed a memorandum with the court discussing the PSR, and noting with respect to its recital of Stevens's past criminal convictions that "Mr. Stevens does not deny his involvement in this conduct." Similarly, at sentencing defense counsel discussed the PSR's description of Stevens's prior offenses and stated "Mr. Stevens does not dispute the fact that he was involved in that conduct or that he pled guilty to those." Neither Stevens's original nor his reply brief asserts that either Stevens or his counsel did not receive and read the PSR or did not discuss it together; nor does Stevens therein raise any claim of prejudice or assert any inaccuracy in the PSR. Nor does anything in the record suggest otherwise. Stevens merely contends that the district court's error was "equivalent to a structural defect" in the sentencing process, affected his substantial rights per se , and therefore requires automatic vacatur and remand. We find this contention meritless.

At oral argument Stevens's counsel continued to predicate his Rule 32 contention on the basis of asserted structural defect. Nor did he assert that Stevens had not read the PSR or had not discussed it with counsel. He conceded that Stevens did not deny involvement in the prior criminal offenses listed in the PSR. However, under questioning by the court, counsel did assert that Stevens had not read the entire PSR and had not discussed the entire PSR with counsel. Counsel also asserted that the PSR erroneously failed to indicate that a co-perpetrator was

7

involved in one of the instant offenses, that Stevens did not knowingly waive counsel in one of his prior retail theft convictions, and that the PSR erroneously stated he had struck the victim in a prior conviction for robbery and burglary (the latter two contentions are difficult to reconcile with counsel's above noted statements to the district court at and before sentencing). Since these contentions were not raised on brief (nor below), they are waived. See, e.g., In Re Trans World Airlines, Inc., 145 F.3d 124, 133 (3d Cir. 1998); Nagle v. Alspach, 8 F.3d 141, 143 (3d Cir. 1993). In any event, no prejudice is shown. Stevens was sentenced at the very bottom of the applicable guideline range. None of the matters mentioned could have affected Stevens's criminal history category (although the retail theft conviction matter could have reduced his criminal history points by one) or the applicable guideline range, and, considering the record as a whole, it is clear that even if all these matters were resolved in Stevens's favor there is no reasonable likelihood that the sentence would have been different.

The Supreme Court has distinguished between two types of constitutional error that occur at both trial and sentencing: "trial errors," which are subject to constitutional harmless error analysis, and "structural defects," which require automatic reversal or vacatur. See Arizona v. Fulminante, 111 S.Ct. 1246, 1264-65 (1991); United States v. Pavelko, 992 F.2d 32, 35 (3d Cir. 1993). Structural defects "defy analysis by harmless error' standards," Fulminante, 111 S.Ct. at 1265, because they "infect the entire trial process," Brecht v. Abrahamson, 113 S.Ct. 1710, 1717 (1993). Without certain "basic protections" such as the right to counsel or an unbiased judge, "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, .. . and no criminal punishment may be regarded as fundamentally fair." Rose v. Clark, 106 S.Ct. 3101, 3106 (1986) (internal citations omitted); see also Chapman v. California, 87 S.Ct. 824, 827-28 & n.8 (1967) (observing that some constitutional minimums are "so basic to a fair trial that [their] infraction can never be treated as harmless error").

"The list of errors that are structural in quality is a limited one," West v. Vaughn, 204 F.3d 53, 60 n.7 (3d Cir.

8

2000), and includes complete denial of counsel, biased judges, racial discrimination in selection of grand jury, denial of self-representation at trial, denial of public trial, and seriously defective reasonable doubt instruction, see Neder v. United States, 119 S.Ct. 1827, 1833 (1999) (listing cases). See also United States v. Mortimer, 161 F.3d 240, 241-42 (3d Cir. 1998) (finding structural defect in judge's unexplained absence from the courtroom during defense counsel's closing argument); Henderson v. Frank , 155 F.3d 159, 170 (3d Cir. 1998) (deprivation of right to counsel at suppression hearing constituted structural defect). Structural errors at sentencing include deprivation of counsel during the sentencing hearing itself, see United States v. Salemo, 61 F.3d 214, 221-22 (3d Cir. 1995), abdication of judicial role by authorizing a probation officer to determine the manner of restitution, see United States v. Mohammad, 53 F.3d 1426, 1438-39 (7th Cir. 1995), and in absentia sentencing, see Hayes v. Arave, 977 F.2d 475, 479-80 (9th Cir. 1992). "Stevens invites this Court to add to this "very limited class of cases," Johnson v. United States, 117 S.Ct. 1544, 1549 (1997), noncompliance with Rule 32(c)(3)(A)'s verification requirement. We must decline his invitation. First, it is indisputable that a violation of Rule 32(c)(3)(A) is nonconstitutional error, which generally cannot amount to a structural defect. See United States v. Quintero, 38 F.3d 1317, 1331 (3d Cir. 1994) (finding violation of statutory right nonconstitutional error).5 Second, we do not consider this error a structural defect because the district court's failure to verify whether Stevens had read and discussed the PSR with counsel does not "necessarily render [the sentencing process] unfair." Rose, 106 S.Ct. at 3106 (emphasis added). At sentencing, Stevens was represented by counsel before an impartial judge; in

_____

5. Nonconstitutional error is harmless when "it is highly probable that the error did not contribute to the judgment." United States v. Dispoz-O-Plastics, Inc., 172 F.3d 275, 286 (3d Cir. 1999) (quoting Government of Virgin Islands v. Toto, 529 F.2d 278, 284 (3d Cir. 1976)); see also Kotteakos v. United States, 66 S.Ct. 1239, 1248 (1946) (when reviewing nonconstitutional errors on direct appeal, conviction or sentence will only be set aside if "the error itself had substantial influence" on the outcome). Accordingly, without any showing of prejudice, nonconstitutional error will usually be deemed harmless.

the presence of both these protections, we recognize a "strong presumption" against finding any other errors to be structural defects. See id. The district court's noncompliance with Rule 32(c)(3)(A) did not infect "each and every aspect" of Stevens's sentencing, but rather only the determination of the extent of Stevens's familiarity with the PSR. Cf. Hays, 977 F.2d at 479. Stevens was still able to make any and all objections to the PSR, as well as the government's arguments, and had the opportunity to address the court before sentencing. The impact, if any, of this error--and as noted above, Stevens makes no competent allegation of inaccuracy in the PSR, or that he never read it6--was localized and did not exhibit the same "pervasive" effect as the structural errors that this Court and others courts have recognized. See id.

Our conclusion finds support in two of this Court's recent opinions, United States v. Faulks, 201 F.3d 208 (3d Cir. 2000), and United States v. Beckett, 208 F.3d 140 (3d Cir. 2000). In Faulks, the district court violated FED. R. CRIM. P. 43(a) by resentencing Faulks by written judgment only, instead of orally and in Faulks's presence. This Court held that this error required automatic vacatur and resentencing because a defendant's right to be "eyeball[ed]" by the sentencing judge was "not a meaningless formality" but rather a "fundamental procedural guarantee that places the defendant before the judge at a culminating moment of the criminal judicial process." Faulks, 201 F.3d at 209, 211. This protection, the Faulks court found, was "deeply rooted" in the Confrontation Clause of the Sixth Amendment. See id. at 211. Stevens has not alleged a Rule 43(a) violation and has not provided anything beyond his own unfounded assertions to demonstrate the "special importance" of the district court's error that would render it a structural defect in the sentencing process. Id. The Faulks court observed that the requirement that the

_____

6. Moreover, without some showing that his attorney actually failed to discuss the PSR with Stevens, we will not presume that counsel acted negligently or otherwise provided ineffective assistance. See Strickland v.
Washington, 104 S.Ct. 2052, 2065 (1984) ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.").

defendant be present at both sentencing and resentencing was "the embodiment of a value deeply embedded in our polity (and our jurisprudence)." Id. at 209. While no one disputes the importance of the defendant's understanding the PSR, which is "the critical document not only in the sentencing process, but also in the deliberations of the Parole Commission and the Bureau of Prisons," Mays, 798 F.2d at 80, Rule 32(c)(3)(A)'s verification requirement does not exhibit an even remotely similar "deeply rooted" genealogy.

In Beckett, this Court held that the district court's failure to provide Beckett his right to allocution on resentencing did not require vacatur and resentencing because the district court had departed downward and sentenced Beckett below the applicable guidelines range and Beckett had demonstrated no prejudice. See Beckett, 208 F.3d at 148 (citing United States v. Lewis, 10 F.3d 1086, 1092 (4th Cir. 1993)). Discussing the allocution right, the Supreme Court in United States v. Green, 81 S.Ct. 653 (1961), held that an earlier version of Rule 32 required that the defendant himself, and not merely his attorney, have an opportunity to address the court before sentencing. See id. at 655. In doing so, the Court traced the roots of the common law allocution back to the seventeenth century and observed that the need for that right persisted despite the many intervening changes in criminal procedure since that time. See id. ("The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself."). Despite the importance of this right, the Supreme Court held soon after Green that denial of the allocution right was not cognizable on federal habeas corpus review because it "is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 82 S.Ct. 468, 471 (1962).

By contrast, the requirement that the sentencing court verify that the defendant has read and discussed the PSR with counsel was a point of some controversy and little consensus until 1983, when the drafters of the Rules of Criminal Procedure added it to Rule 32. See FED. R. CRIM.

P. 32 advisory committee's notes (chronicling dispute over and eventual adoption of this requirement). We find it significant that a defendant's right to allocution, indisputably more valued and "deeply rooted" than the verification requirement of Rule 32, nonetheless remains subject to harmless error analysis and fails to rise to the level of a structural defect. In light of that fact, as well as the general presumption against expanding the list of structural defects, we are unable to conclude that the district court's error in this case constituted a structural defect. Accordingly, we join the Fourth, Sixth, Seventh, Ninth, and Tenth Circuits in holding that noncompliance with Rule 32(c)(3)(A) does not require vacatur and resentencing without at least some showing of prejudice by the defendant. See Lockhart, 58 F.3d at 89; Stevens, 851 F.2d at 144 & n.7; Rodriguez–Luna, 937 F.2d at 1213; Davila–Escovedo, 46 F.3d at 844; Rangel–Arreola, 991 F.2d at 1526 & n.5.

As the Mays Court noted, district court errors like this one are regrettable and easily avoidable, and we exhort district courts to engage in the "simple practice" of addressing defendants directly to ensure they have read and discussed the PSR with counsel. See Mays, 798 F.2d at 80. Nevertheless, we cannot agree that this type of error constitutes a structural defect in the sentencing process. In the absence of any showing of prejudice or the denial of substantial rights caused by this error, Stevens's claim must fail.

II. Refusal to Depart Downward

In his second point on appeal, Stevens argues that the district court erred in denying his request for a downward departure. At his sentencing hearing, Stevens moved for a downward departure on three separate grounds: (1) Stevens's criminal history category of VI significantly overrepresented the severity of his criminal history; (2) Stevens's post-offense rehabilitation, including the completion of religious and relationship-oriented courses, warranted downward departure; and (3) that a "combination of factors," including the fact that Stevens spent a significant amount of time in county jail facilities in New Jersey and Pennsylvania while awaiting his sentencing

hearing, warranted a downward departure.7  Regarding the
third basis for departure, Stevens contended that the length
of his incarceration in these county jails and the allegedly
substandard conditions there were "mitigating
circumstances" not taken into consideration by the United
States Sentencing Commission that militated in favor of
departure pursuant to U.S.S.G. S 5K2.0.8 At the sentencing
hearing, the court made the following remarks:

> "Before I talk to Mr. Stevens, I think that having
> reviewed the presentence investigation and having had
> the benefit of defense counsel's memorandum with
> regard to the guideline--criminal history category, I
> think that on balance it probably does not over-
> emphasize his criminal record. And, these retail thefts
> were within a short span of time. There were a number
> of them, three of them, in fact. And, I think the range
> here of criminal six is appropriate based upon the
> presentence investigation and his prior record, so I
> won't change that.
>
> With regard to any other downward departures, the
> Court finds that there isn't a significant enough--
> although the Court feels it has the authority to grant a
> departure here, the Bible studies and other studies the
> defendant has engaged in are admirable, and studies I
> think someone facing what he is facing would in fact

_____

7. Evidently, Stevens had been shuttled between various county jails
while awaiting sentencing. He spent 35 days in Mercer County, New
Jersey, 75 days in Lehigh County, Pennsylvania, and 132 days in
Passaic County, New Jersey.

8. U.S.S.G. S 5K2.0 provides in relevant part:

"[T]he sentencing court may impose a sentence outside the range
established by the applicable guidelines, if the court finds that there
exists an aggravating or mitigating circumstance of a kind, or to a
degree, not adequately taken into consideration by the Sentencing
Commission in formulating the guidelines that should result in a
sentence different from that described.' . . . The decision as to whether
and to what extent departure is warranted rests with the sentencing
court on a case-specific basis . . . . Presence of any such factor may
warrant departure from the guidelines, under some circumstances, in
the discretion of the sentencing court."

do and participate in. As to the incarceration factor, which Counsel brought up, while the Court recognizes that conditions in county prisons might not be as conducive to and indeed aren't as conducive to getting certain kinds of programs to him, I don't think what has been represented to the Court here is the type of incarceration that would warrant any consideration on the guidelines for departure."

Stevens concedes, as he must, that in denying the motion on the first two grounds, the district court clearly stated that it had the authority to grant a departure on these grounds but chose not to do so. He maintains, however, that in considering the third basis for departing, the "combination of factors" regarding his presentence incarceration, the district court did not make clear whether it was denying the departure on legal or discretionary grounds.

This Court's jurisdiction to consider Stevens's argument depends on the basis for the district court's ruling. See United States v. Denardi, 891 F.2d 269, 271-72 (3d Cir. 1989). If the ruling was based on the district court's belief that a departure on the grounds proffered by the defendant was legally impermissible, we have jurisdiction to determine whether the district court's understanding of the law was correct. See United States v. Mummert, 34 F.3d 201, 205 (3d Cir. 1994). "By contrast, if the district court's ruling was based on an exercise of discretion, we lack jurisdiction." Id. If the district court's stated reasons are ambiguous--so that the record does not reflect whether the court's denial is based on legal or discretionary grounds-- then the proper remedy is to "vacate the sentence and remand for the district court to clarify the basis for its ruling." Id.; see also United States v. Evans, 49 F.3d 109, 112 (3d Cir. 1995).

We find that the district court's comments were not sufficiently ambiguous as to require vacatur and remand. At the outset of the second paragraph, the court set out to discuss "any other downward departures." It then acknowledged that it had the authority to grant a departure on the basis of these factors, which were post-offense rehabilitation and "the incarceration factor." Regarding

14

Stevens's post-offense rehabilitation activities, such as his Bible study classes, the district court found them admirable but not sufficient to warrant a downward departure. This was clearly a discretionary decision. Assuming arguendo that the condition of Stevens's pretrial confinement is a permissible basis for downward departure,[9] it is similarly clear that the district court's denial of Stevens's request on this basis was also discretionary. When the district court stated "although the Court feels it has the authority to grant a departure here" we think it was referring to all of the "other downward departures" sought by Stevens, and not just the one referable to the Bible studies, which is the next item that the Court took up. Under these circumstances, when the district court stated that "I don't think what has been represented to the court here is the type of incarceration that would warrant any consideration on the guidelines for departure," the Court was not stating that it had no legal authority to grant a departure based on the conditions of Stevens's pretrial confinement, but rather that Stevens had not persuaded the court that a departure was appropriate in his case. This was an exercise of discretion and therefore unreviewable. See Mummert, 34 F.3d at 205.

_____

9. While there has been some contention among the district courts of this Circuit over the propriety and wisdom of considering the conditions of confinement as a basis for downward departures, several decisions indicate that granting a departure on this ground "is not categorically foreclosed." United States v. Ogembe, 41 F. Supp.2d 567, 571 (E.D. Pa. 1999); see also United States v. Pacheco, 67 F. Supp.2d 495, 498 (E.D. Pa. 1999) ("While exceptionally hard conditions of confinement might qualify for a departure . . . , a defendant must demonstrate to the court that the conditions compare unfavorably to those suffered by other inmates.") (internal citations omitted); United States v. Miranda, 979 F. Supp. 1040, 1044-45 (D.N.J. 1997), appeal dismissed, 159 F.3d 1354 (3d Cir. 1998) (denying downward departure based on conditions of pretrial confinement as record was "too sparse" to demonstrate that the conditions were "sufficiently deplorable" ); United States v. Sutton, 973 F. Supp. 488, 493 (D.N.J. 1997), aff 'd, 156 F.3d 1226 (3d Cir. 1998) ("Unusual pretrial confinement . . . in either length or severity of condition, can properly be considered by the sentencing court.") We do not decide the question of whether confinement conditions constitute a permissible basis for downward departure.

15

III. Sentence Calculation

In a separate pro se brief, Stevens claims that when calculating his sentence for the February 11, 1997 carjacking offense, the district court improperly imposed a five-level enhancement based on the offense characteristic of "brandishing" a firearm, pursuant to U.S.S.G. S 2B3.1(b)(2)(C). While this enhancement would normally have applied to this carjacking offense, because Stevens also received a mandatory minimum ten-year concurrent sentence for carrying a firearm, under 18 U.S.C.S 924(c), the enhancement did not apply to the February 11 carjacking. See U.S.S.G. S 2K2.4, App. Note 2.10 However, as reflected by the PSR, Stevens's sentence fully complied with the guidelines: pursuant to section 2K2.4, the "brandishing" enhancement was specifically not applied to Stevens's sentence for the February 11, 1997 offense.11 The enhancement was applied, however, to Stevens's sentence for his February 6, 1997 carjacking offense, respecting which he was not charged with a firearms violation. Applying the five-level enhancement to his sentence for the February 6, 1997 carjacking was entirely proper. 12

_____

10. U.S.S.G. S 2K2.4, Application Note 2, provides in relevant part:

> "Where a sentence under this section is imposed in conjunction
> with a sentence for an underlying offense, any specific
characteristic
> for the possession, use, or discharge of an explosive or firearm .
. .
> is not to be applied in respect to the guideline for the underlying
> offense."

The Background Note states:

> "18 U.S.C. SS 844(h), 924(c), and 929(a) provide mandatory
> minimum penalties for the conduct proscribed. To avoid double
> counting, when a sentence under this section is imposed in
> conjunction with a sentence for an underlying offense, any specific
> offense characteristic for explosive or firearm discharge, use, or
> possession is not applied in respect to such underlying offense."

11. Regarding the February 11, 1997 offense, Stevens did receive a four-level enhancement for abducting his victims, pursuant to U.S.S.G. S 2B3.1(b)(4), and a two-level enhancement for committing an offense that involved carjacking, pursuant to U.S.S.G. S 2B3.1(b)(5).

12. Regarding the February 6, 1997 offense, Stevens received the two-level carjacking enhancement, as well as a one-level enhancement for committing an offense that involved a loss (actual or intended) of more than $10,000, pursuant to U.S.S.G. S 2B3.1(b)(7).

Conclusion

Stevens's sentences are

AFFIRMED.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17