

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-30-2003

# USA v. Rivera

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4119

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Rivera" (2003). *2003 Decisions*. Paper 172.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/172

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 02-4119

UNITED STATES OF AMERICA,

v.

JEFFREY RIVERA,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 01-cr-00385)
District Judge: Hon. Bruce W. Kauffman

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 16, 2003

BEFORE: MC KEE, SMITH and COWEN, Circuit Judges

(Filed October 30, 2003 )

OPINION

COWEN, Circuit Judge.

Jeffrey Rivera appeals from the October 28, 2002 judgment of conviction and

sentence of the United States District Court for the Eastern District of Pennsylvania. We

will vacate and remand for resentencing.

Rivera was born and raised in Puerto Rico and did not come to the continental United States until 1996. He neither speaks nor understands much of the English language and claims to be incapable of reading English. He required the assistance of an interpreter in his various court proceedings.

On July 11, 2001, a grand jury returned a three-count indictment against Rivera. In Count I, Rivera was charged with conspiracy to distribute heroin and cocaine base in violation of 21 U.S.C. § 846. Pursuant to a plea agreement, Rivera pled guilty on June 25, 2002 to the portion of this first count alleging conspiracy to distribute more than 1000 grams of heroin. The District Court dismissed the remaining charges at the October 24, 2002 sentencing hearing.

The United States Probation Office submitted a presentence investigation report ("PSI"). This PSI was initially prepared on August 27, 2002 and then revised on September 17, 2002.[1] It was written in English, and it appears that the document was never translated into Spanish. According to the PSI, Rivera purchased heroin and then sold this drug in the Bethlehem, Pennsylvania area where he resided. This activity occurred between late 1998 and June 2000. Law enforcement agents were informed that heroin was stored and packaged at the Bethlehem residence of Rivera's mother. They were also told that this heroin was occasionally "stored in the refrigeration or in the

---

[1] The PSI incorrectly gave the date of this revision as September 17, 2001.

bedroom of the defendant's brother." PSI ¶ 12. On June 9, 2000, the Pennsylvania State Police discovered a package containing 96 grams of heroin at his mother's home.

Rivera was allocated seven criminal history points, placing him in criminal history category IV. This calculation was based on three prior convictions. One point was received for a June 22, 1998 retail theft conviction in Bethlehem. Rivera was arrested on August 25, 1994 and found guilty of possession of a controlled substance by the Superior Court of Puerto Rico in Bayamon on February 21, 1995. This conviction resulted in three criminal history points. Finally, three points were based on two counts of illegal appropriation contrary to article 18 of the Puerto Rico Vehicle Protection Law. The PSI indicated that Sierra was arrested on February 23, 1993 and convicted on July 30, 1993 by the Bayamon Superior Court. He was sentenced to five years imprisonment for the first charge and a consecutive term of six months for the second charge. The category IV criminal history, together with a total offense level of 31, resulted in a sentencing range of 151 to 181 months.[2]

According to the PSI, Rivera's mother, together with five maternal half-siblings with ages between 13 and 17, have lived in Bethlehem. The report contained no mention of the medical or mental condition of the mother and half-siblings and was silent as to any assistance or support provided by Rivera to these relatives.

---

[2] The PSI noted that the United States Probation Office for the District of Puerto Rico submitted a request for official court documents relating to the two Puerto Rico convictions.

Rivera appeared for sentencing on October 24, 2002. Rivera's counsel, Assistant Federal Defender Eric Vos, indicated that the defense has not submitted any additional written materials. The District Court then said, "I understand, with regard to the presentence report, that there is an objection about one of the past convictions." App. at 22a. It then proceeded to a quite extensive examination of the defense objection to the PSI's inclusion of the 1993 Puerto Rico conviction. Shortly before imposing sentence, the District Court asked the attorneys whether there were any other objections to the PSI. The attorneys responded that there were none, and the District Court generally adopted the PSI's findings of fact.

Without taking the 1993 conviction into consideration, Rivera would have a criminal history category of III, leading to a reduced sentencing range of 135 to 168 months. Assistant United States Attorney Albert S. Glenn submitted a recently received copy of the Puerto Rico court's 1993 certified judgment of conviction. Vos continued to challenge this 1993 conviction, noting that Rivera "holds fast to the position that that case was ultimately dropped." App. at 27a. He questioned how his client could have been arrested in August 1994 when he was supposedly sentenced to five and a half years of incarceration for the 1993 conviction. The defense admitted that such a course of events could merely indicate that he was released from prison early and acknowledged that Puerto Rico's parole and release practices are not known. But Vos continued to assert that this timing supports the conclusion that the 1993 conviction was somehow vacated.

4

Probation Officer Michael Pascarella then addressed the District Court regarding the efforts of a United States probation officer in Puerto Rico to verify the 1993 conviction. Although Pascarella did not speak directly with him, this Puerto Rico officer discussed this matter with staff in Allentown, Pennsylvania. It appears that this officer obtained the judgment of conviction from the courthouse in Puerto Rico. This judgment was the last official document concerning Rivera's sentence in the court folder. This judicial file contained no indication that the conviction was set aside or that the sentence was reduced or suspended. Pascarella continued:

> [W]e do not know when the defendant was released, there are no records in the Probation Department or the Department of Corrections indicating when the defendant was released and it's possible that after five years they could have been destroyed, we just don't know that. But -- and the Probation officer from Puerto Rico also said that it is not an uncommon practice that even on a five-year sentence that defendants are released after serving a few months.

App. at 34a-35a. He further discussed Rivera's apparently early release from imprisonment:

> . . . But the representation to us is that the -- and actually, your Honor, I can be more specific - contact was made with the Probation Office, the Bayamon Probation Office and the Puerto Rico Corrections Department, who informed that -- what they're saying is the defendant was not placed on probation or parole for any conviction, but that doesn't mean that the conviction didn't occur, it just doesn't -- it means that he could have been sentenced and then immediately released, and that is -- that's the representation that we received from the Probation officer over the phone that there is -- they just don't know and that it's not unusual for defendants to be sentenced to terms of incarceration and then to be released quickly.

5

App. at 39a.[3]

The District Court specifically asked Vos what further investigatory steps he could undertake if the sentencing were to be continued. Rivera's counsel noted the possibility that no further information could be uncovered. Although believing "that we have enough to go forward today," he emphasized the negative consequences for his client if he were incorrect. App. at 40a. He therefore suggested that Spanish-speaking investigators at his office further look into the 1993 conviction. This would give the defense "a chance to go back and either confirm that which seems to be confirmed today or to dig something up that shows that we're wrong." App. at 40a-41a. He subsequently stated that the District Court could render "an educated decision" on the basis of the current record. App. at 58a.

The District Court eventually concluded that the preponderance of the evidence supports the PSI's criminal history determination. In imposing a 151-month term of incarceration, it stated:

> I'd like the record to reflect that that is a sentence that I would have
> imposed even had I determined that the criminal history category should be
> 3, I have determined that it should be 4 because of what I just stated, that
> the preponderance of the evidence establishes that the three points that were
> in dispute should be included in the calculation and, therefore, we have a
> criminal history category of 4.

App. at 59a.

---

[3] The government also introduced a computerized criminal history record from the United States Probation Office in Puerto Rico. 56a-57a. This document appeared "to be consistent with the presentence report." App. at 58a.

The defense also made an oral motion at the sentencing hearing for downward departure on the basis of family circumstances. Vos explained the untimeliness of this motion:

> . . . I was recently notified by the defendant that he had a sick parent and two sick relatives, his brother and sister. I have learned through Carmen Herrera, because she actually found out before I did, I was not the original attorney on this, and by the witnesses that came today that my client's mother suffers from severe mental illness and she is the sole caretaker for two children who suffer from autism, and actually the agent here today helped confirm that, he knew that also, I did not know that.

App. at 30a.

Rivera's father-in-law, Miguel Nieves, testified on his behalf. He stated that Rivera's mother is "a very sick lady" who has a nervous problem and two disabled children. App. at 49a. According to Nieves, "anybody who sees [the children] will realize that they are sick." App. at 49a. The defense counsel asked whether he had heard of the children's autism. Nieves answered in the affirmative because of the government assistance received for their benefit. The father-in-law indicated that Rivera was always very concerned about his mother and disabled siblings. When asked whether his son-in-law provided financial or physical support, Nieves testified that he purchased furniture for them, which the disabled children would break "in a couple of months." App. at 50a. He claimed that he sometimes went with Rivera on his visits to help these relatives. On cross-examination, the witness admitted that he was unaware of the mother's name and did not know whether Rivera assisted with the rent payments. He did "know that in

several occasions, two or three occasions, [Rivera] would help [his mother] with the money for food, for furniture, and so on." App. at 51a. According to Nieves, this assistance was provided when Rivera was not incarcerated.

Rivera also provided a brief account of his mother's alleged plight:

I believe that truly my mother has a lot of mental problems. She doesn't know how to pay the rent, she doesn't know how to pay the bills. She has lost three apartments already. I don't know if she's at a shelter at the moment.

App. at 53a. He stated that she was evicted from at least two apartments because of the behavior of his siblings.

The District Court denied this motion to depart. Although acknowledging the authority to depart and expressing sympathy, it held that the evidence was not sufficient to satisfy the very high standard for departure. Rivera also still faced a statutory mandatory minimum of ten years. According to the District Court, Rivera's family would therefore be required to seek other assistance even if it departed to this mandatory minimum sentence of 120 months. The District Court accordingly imposed a sentence of 151 months imprisonment, five years of supervised release, a $1000.00 fine, and a special assessment of $100.00. Rivera appealed.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Rivera argues that the District Court committed prejudicial error by failing to verify that he had read and discussed the PSI with his attorney. Because this issue was not brought to the attention of

8

the District Court, Rivera must satisfy the plain error standard of review. *See, e.g.,*

*United States v. Stevens*, 223 F.3d 239, 242 (3d Cir. 2000). A defendant must

demonstrate that "(1) an error was committed; (2) the error was plain; and (3) the error

affected [the defendant's] substantial rights." *Id.* (citing *United States v. Olano*, 507 U.S.

725, 732-34 (1993)). Even if these elements are satisfied, an appellate court is still not

required to order correction. *Id.* (citing *Olano*, 507 U.S. at 734). Such a correction

should be ordered "only if the error 'seriously affect[s] the fairness, integrity, or public

reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 242).

It is well-established that the district court bears the obligation to ensure that the

defendant and his or her attorney have read and talked about the presentence report. At

the time of sentencing, Federal Rule of Criminal Procedure 32(c)(3)(A) required the court

to "verify that the defendant and defendant's counsel have read and discussed the

presentence report."[4] We have refused to view this provision as mandating that the

district court specifically ask the defendant if he had the opportunity to read and discuss

this report with his or her lawyer. *Stevens*, 223 F.3d at 241; *United States v. Mays*, 798

F.2d 78, 80 (3d Cir. 1986). This Court has adopted a more functional standard, "requiring

only that the district court 'somehow determine that the defendant has had this

opportunity.'" *Stevens*, 223 F.3d at 241 (quoting *Mays*, 798 F.2d at 80).

---

[4] This mandate now appears as Federal Rule of Criminal Procedure 32(i)(1)(a).

The able district judge clearly did not satisfy this standard. The District Court never specifically inquired whether Rivera had read the PSI and discussed this document with his lawyer. The record lacks any functional equivalent to such a direct colloquy. The PSI itself was never translated into Spanish even though Rivera is apparently unable to read English. The government does not point to any statement by either the defense counsel or his client indicating that Rivera had the opportunity to read and talk about the PSI. *See Mays*, 798 F.2d at 80 (holding that defense counsel's reference to reading the presentence report with defendant satisfied verification standard). The District Court did note Rivera's objection to the PSI's inclusion of the 1993 Puerto Rico conviction and fully considered his motion for downward departure on the basis of extraordinary family ties and responsibilities. The District Court further asked whether there were any additional objections to this PSI, and Vos indicated there were none. Such general statements, however, are not sufficient to satisfy the verification requirement. *Stevens*, 223 F.3d at 242 (finding that district court's inquiry as to "any requests for additions or corrections to the presentence" report was insufficient). The government accordingly concedes that the District Court erred.

Rivera must still demonstrate that this plain error affected his substantial rights. We have held that the failure to satisfy the verification requirement does not mandate resentencing unless the defendant demonstrates that this error resulted in prejudice. *See, e.g., Stevens*, 223 F.3d at 242-43. The error "'must have affected the outcome of the

10

district court proceedings.'" *Id.* at 242 (quoting *Olano*, 507 U.S. at 734)). The government correctly points out that Rivera was not prejudiced merely because the District Court adopted the PSI's calculation of a category IV criminal history. According to the District Court, the same term of 151 months would have been imposed even if it agreed with Rivera that the 1993 Puerto Rico conviction had been vacated and the lower but overlapping sentencing range under criminal history category III thereby applied. It also appears highly unlikely that Rivera would have been able to present sufficient evidence of family circumstances to justify a downward departure even if he had been given the opportunity to review the PSI before sentencing. But we agree with Rivera that, considering these two aspects together, the District Court committed a prejudicial error in failing to ensure that he had read the PSI and discussed its contents with his lawyer.

If Rivera had the chance to review the PSI, a more developed challenge to its inclusion of the 1993 Puerto Rico conviction could have persuaded the District Court that this conviction had been either dismissed or otherwise vacated. According to the government, Rivera would likely be unable to produce records supporting his claim of dismissal. A copy of the certified judgment of conviction was submitted, and the probation officer in Puerto Rico apparently could find no indication that this conviction was somehow set aside. The status of this earlier conviction, however, clearly presented a difficult question for the District Court. Rivera was arrested on August 25, 1994 even though he had been sentenced on July 30, 1993 to an overall term of five and one half

11

years. Even though he apparently served only a fraction of this sentence, the Bayamon Probation Office and the Puerto Rico Corrections Department indicated that Rivera was never paroled or placed on probation. Although the probation officer from Puerto Rico noted the possibility of an immediate release and the destruction of relevant papers, additional evidence, possibly obtained by Spanish-speaking investigators from the defender's office, could further clarify this issue.

The exclusion of the 1993 conviction would result in a criminal history category of III and a lower sentencing range of 135 to 168 months. The PSI lacked any reference to the condition of Rivera's mentally ill mother and autistic half-siblings as well as any mention of the assistance provided by Rivera to these relatives. The defense did make a last-minute departure motion based on extraordinary family ties and responsibilities, but he could have presented a fuller account of these family circumstances if he had been given an opportunity to review and discuss these omissions from the PSI. Rivera could have received a lesser term within the category III sentencing range if he submitted a more fully documented and detailed account of the needs of his mother and her children and his efforts to help them.

The District Court accordingly committed prejudicial error, affecting the overall fairness of the sentencing proceeding, by failing to satisfy its verification duty under Rule 32. We will vacate the District Court's judgment and remand this matter for resentencing. Rivera is to be accorded an opportunity to present a fully developed

challenge to the PSI's inclusion of the 1993 Puerto Rico conviction. He also may submit any further evidence of his family circumstances in an attempt to justify a sentence of less than 151 months under the lower sentencing range that applies when the 1993 conviction is excluded from the criminal history calculation. The District Court may certainly decide to impose the same sentence as before on the grounds that the 1993 conviction remains valid and the 151-month term of imprisonment therefore constitutes the lowest possible sentence under the applicable category IV range or that his family circumstances do not justify a lesser sentence even under the sentencing range for criminal history category III.

### III.

For the foregoing reasons, the judgment of the District Court entered on October, 28, 2002 will be vacated. This matter will be remanded to the District Court for resentencing consistent with this opinion.

_____

TO THE CLERK:

Please file the foregoing opinion.

  /s/ Robert E. Cowen
United States Circuit Judge