NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3929
_____

UNITED STATES OF AMERICA

v.

CYRUS R. SANDERS
                                                      Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 1-09-cr-00316-004)
District Judge:  Honorable William W. Caldwell
_____

Submitted Under Third Circuit LAR 34.1(a)
April 26, 2012
_____

Before:  GREENAWAY, JR., ROTH, and TASHIMA*, *Circuit Judges*.

(Opinion Filed: May 25, 2012)
_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge.*

---

    * Honorable A. Wallace Tashima, Circuit Judge, United States Court of Appeals
for the Ninth Circuit, sitting by designation.

Appellant Cyrus R. Sanders ("Sanders") appeals the District Court's September 22, 2010 Order sentencing him to a term of thirty-three months of imprisonment. Sanders moved for a downward departure, based on "unduly harsh and inappropriate conditions during pre-trial confinement at the Dauphin County Prison." Specifically, Sanders's request for a downward departure was based on a brutal assault he allegedly suffered while incarcerated in the Dauphin County Prison.

The District Court denied Sanders's motion. Sanders contends that the District Court denied his motion because it incorrectly assumed that it did not have the authority to grant the downward departure, particularly since he had filed a civil rights action under 42 U.S.C. § 1983. Sanders argues that the sentence imposed was unreasonable. For the following reasons, we will dismiss the appeal for lack of jurisdiction.

## I. BACKGROUND

We write primarily for the benefit of the parties and shall recount only the essential facts. Sanders was charged, along with twelve other co-conspirators, in a thirteen-count indictment related to conspiracy to manufacture and the manufacture of counterfeit United States currency. He pled guilty to Count nine, Pass and Utter Counterfeit United States currency, pursuant to 18 U.S.C. § 472. As part of a written plea agreement between the Government and Sanders, the Government agreed to recommend a three-level reduction in Sanders's sentence for acceptance of responsibility. Sanders agreed to cooperate, and if it was determined that he provided substantial

2

assistance, the Government indicated that it would file a § 5K1.1 motion seeking a downward departure.

After his guilty plea, a Pre-Sentence Investigation Report ("PSR") was filed under seal. Sanders objected to the PSR on several grounds, including the fact that he did not receive a two-level reduction in his sentence for a mitigating role under U.S.S.G. § 3B1.2.[1] He also objected to the assessment of criminal history points. He claimed that because he had engaged in a crime spree, each crime that made up part of his criminal history should be aggregated, resulting in fewer criminal history points.

At the sentencing hearing, Sanders withdrew his objections to the criminal history points calculation. At that time, Sanders also moved for a downward departure, pursuant to U.S.S.G. § 5K2.0, because of the treatment he received in the Dauphin County Prison. Specifically, Sanders alleged that he was severely beaten by several prison guards, while he was detained. He filed a prisoner's civil rights action, pursuant to 42 U.S.C. § 1983, against Manny Rose, the Commanding Officer, who allegedly slammed Sanders to the floor and punched him several times. Sanders also named the Dauphin County Prison, and other individual defendants based on his injuries. The Government suggested that the District Court should consider the circumstances of the prison beating under 18 U.S.C. § 3553(a).

---

[1] After oral argument, the District Court determined that Sanders was not a minor participant in the conspiracy and overruled his objection.

3

The District Court denied Sanders's motion for downward departure, and sentenced him to 33 months of imprisonment. Sanders filed a timely appeal.

## II.  JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction, pursuant to 18 U.S.C. § 3231. Our jurisdiction to consider Sanders's argument "depends on the basis for the district court's ruling." United States v. Stevens, 223 F.3d 239, 247 (3d Cir. 2000). "We do not have jurisdiction to review discretionary decisions by district courts to not depart downward. Jurisdiction arises, however, if the district court's refusal to depart downward is based on the mistaken belief that it lacks discretion to do otherwise." United States v. Vargas, 477 F.3d 94, 103 (3d Cir. 2007), *abrogated by* U.S. v. Arrelucea-Zamudio, 581 F.3d 142 (3d Cir. 2009). (Internal citations omitted.)

## III.  ANALYSIS

Sanders argues that the District Court erred in basing its refusal to grant his motion for a downward departure on an unreasonable understanding that it could not depart because Sanders filed a prisoner's civil rights action, pursuant to 42 U.S.C. § 1983. The Government contends that this appeal should be dismissed for lack of jurisdiction over the District Court's discretionary denial of a motion for downward departure.

> The sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'. . . The decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis . . . .

4

[the] [p]resence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court.

Stevens, 223 F.3d at 247 n.8 (quoting U.S.S.G. § 5K2.0).

Here, the District Court's colloquy with the Government at sentencing exemplifies a clear understanding that the court may exercise its discretion, if appropriate. The Government commented initially that "[t]he Court certainly could consider that information [relating to Sanders's complaints of brutality], as it can consider all information in sentencing, and if it determines that it should give some kind of credit for that story, it certainly is within the Court's discretion to do that under the [§] 3553(a) factors."

The District Court responded "I recognize that. I just don't see how I can get involved in determining which side of this thing is correct. I mean, that's why you have filed a lawsuit against the people at the Dauphin County Prison. But as regrettable as the incident was, however it happened, I just don't think that that's anything that I can consider in mitigation at this point. So I'm going to have to deny that motion for a downward departure." (App. Vol. 2, 25a-26a.)

The District Court's statement evidences that the court understood that it may exercise its discretion and take the Dauphin County jail incident into account for sentencing purposes. The facts here are similar to those in Stevens, where we concluded that the District Court's consideration of the information presented by the defendant was within its discretion.

5

"When the district court stated that 'I don't think what has been represented to the court here is the type of incarceration that would warrant any consideration on the guidelines for departure,' the Court was not stating that it had no legal authority to grant a departure based on the conditions of Stevens's pretrial confinement, but rather that Stevens had not persuaded the court that a departure was appropriate in his case. This was an exercise of discretion and therefore unreviewable."

See Stevens, 223 F.3d at 248.

As was true in Stevens, we have no jurisdiction over a district court's discretionary denial of a motion for downward departure. Here, the District Court appropriately exercised its discretion.

## IV.    CONCLUSION

We will dismiss this appeal from the District Court's sentencing order.